JOHN E. FURMAN, Appellant, *v.* THE UNION PACIFIC RAIL-
ROAD COMPANY, Respondent.

The law allows of no excuse to a common carrier for a wrong delivery
of goods entrusted to him for transportation, except the fault of the
shipper himself; and where there is any doubt, which may be determ-
ined by documentary evidence, its production should be required.

It is the duty of a carrier, at common law as well as under the factors'
act of this State, to ascertain whether a bill of lading was delivered
to the shipper, and if so, to retain the property until demanded by one
claiming under that title, and to deliver in accordance with it; if
delivery is made without it he runs the risk of showing a delivery in
accordance with its instructions.

Plaintiff's assignees delivered to the B. S. P. Co., at Norfolk, Va., 100 bags
of peanuts, marked " Y," for shipment to Denver, receiving a bill of
lading, in which, after specifying the property, the weight and freight,
was the following: " Marked Y, order notify Zucca Bros." In the
course of transportation the peanuts were delivered to defendant. It
received no bill of lading or copy thereof from the preceding carrier
and it was not notified that any had been issued. It received a " transfer
sheet " which contained this entry: " Consignee ' Y,' Hup Zucca Bros."
The same entry was made in the way-bill made up by defendant's
agents at the forwarding station, but under a column therein headed
"consignee and destination," the destination but no consignee was
given. Defendant received no other notification as to the ownership
or disposition of the goods. It delivered them at Denver to Zucca Bros.,
without the production or surrender of the bill of lading. That firm
had no title to or interest in the goods and had refused to pay a draft
drawn upon them by the shippers, forwarded for collection, which was
attached to the bill of lading; these papers had, in consequence, been
returned to the shippers. *Held*, that defendant, upon failure to deliver
to plaintiff on demand, became liable for a conversion of the goods;
that the use of the word " notify " in the bill of lading showed that
Zucca Bros., were not intended as the consignees, and as none were
named, no delivery could be safely made without production of the
bill.

*It seems* that a carrier receiving goods from another carrier is not justified
in a delivery to the wrong person without a bill of lading, where
one was made, although the delivery was in accordance with the papers
received from the preceding carrier in which a different consignee is
named from the one named in the bill.

(Argued June 16, 1887; decided October 4, 1887.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made the first Monday of January, 1885, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was for the alleged conversion of one hundred bags of peanuts.

The material facts are stated in the opinion.

*Robert L. Harrison*, for appellant. The contract with the Baltimore Steam Packet Company (the first carrier), contained in and evidenced by the receipt or bill of lading, bound each and every one of the connecting carriers who accepted the goods and transported them over its line. (*Maghee* v. *C. & A. R. R. Co.*, 45 N. Y., 514; *Babcock* v. *L. S. & M. S. R. Co.*, 49 id. 497; *Halliday* v. *St. L., K. C. & N. R. R. Co.*, 74 Mo. 159.) The terms of the bill of lading did not justify the delivery of the goods to Zucca Brothers without production and surrender of the bill of lading. (*B'k of Com.* v. *Bissell*, 72 N. Y. 615; *B'k of Peoria* v. *N. R. R. Co.*, 58 N. H. 203; *The Thames*, 14 Wall. 98; *Joslyn* v. *Gr. T. R. Co.*, 51 Vt. 92.) The defendant was bound to deliver the goods in accordance with a bill of lading, and a failure to do so worked a conversion. (Hutchinson on Carriers, 102; *Willard* v. *Bridge*, 4 Barb. 361; *Guillaume* v. *Gen. Trans. Co.*, 100 N. Y. 501.) No variance of the contract made by any intermediate carrier without the consent of the shipper would be binding upon him, and the shipper would not be liable for the negligence of any intermediate carrier in direct contravention of his contract. (*C., H. & D. R. R. Co.* v. *Spratt*, 2 Duv. 4.) The defendant was charged with knowledge of the contents of the bill of lading. (*City B'k* v. *R., W & O. R. R. Co.*, 44 N. Y. 136; *Howard* v. *Shepard*, 9 M. Gr. & S. 296; *Tyndale* v. *Taylor*, 4 Ellis & Bl. 219; *Colgate* v. *Penn. Co.*, 102 N. Y. 120.) The law exacts of the carrier absolutely that the person to whom the delivery is made is the party rightfully entitled to the

goods, and puts upon him the entire risk of mistakes in this respect, no matter from what cause occasioned. (Hutchinson on Carriers, § 344.)

*George H. Adams* for respondent. By the terms of the bill of lading the consignees, Zucca Brothers, were the presumptive owners of the goods, and the delivery of the goods by the defendant to Zucca Brothers released and discharged it from any further obligations on account of the bill of lading. (Hutch. on Car. 101; *Sweet* v. *Barney*, 33 N. Y. 335, 337; *Green* v. *Clark*, 13 Barb. 57, 62; *Lawrence* v. *Minturn*, 17 How. [U. S.], 100.)

PECKHAM, J. The following facts were proved or agreed upon on the trial : On the 25th of February, 1880, the assignors of the plaintiff, being partners, did, at the city of Norfolk, Virginia, deliver to the Baltimore Steam Packet Company, for shipment to Denver, Colorado, 10,460 pounds of peanuts contained in 100 bags and marked " Y ", and that company then delivered to plaintiffs a receipt therefor, of which the material part is as follows :

" The Baltimore Steam Packet Company, R. L. Spoor, General Freight Agent, Baltimore Steam Packet Company.

" NORFOLK, *February* 25, 1880

" Received of Weller & Co. one hundred (100) bags peanuts.

" Weight, 10,460 lbs.   Shipper's weight.

" Frt. to Denver, Col., $3.14 per 100 lbs., marked Y— order notify Zucca Bros. to be transported to Denver, Col., he or they paying freight for the same, etc."

In the course of transportation to Denver, the peanuts were transported to the Missouri State line, where they were received by the defendant, a duly incorporated railroad company, on the 6th day of March, 1880. It did not receive any bill of lading, or copy thereof, with the peanuts from the preceding carrier, but it received them from a railway corporation known as the Hannibal and St. Joseph Railroad Company, and for the purpose of transporting said goods over

the line of defendant's railroad to their destination at Denver; at the same time, and, together with the delivery of the goods to the defendant by the Hannibal and St. Joseph Railroad Company, the latter company delivered to the defendant a paper writing, known as a transfer sheet, of which the following is a copy:

"HANNIBAL AND ST. JOSEPH TRANSFER SHEET,
K's CITY, 3/6, 1880.

Consignee "Y," order Hup, Zucca Bros.,
Denver Col.

8. No. 662. From Chic. Date 3/4 W. B. 1,205, car 2,803. 100 bags P'nuts.

|  | Weight. | Charges. |
|---|---|---|
| All single sacks, good many with holes in, etc., wasting................. | 10,460 | $63 81 |
| Back charges ....................... |  | 82 63 |
|  |  | $146 44 |

Consignor, Union Line,
Balt."

A way bill or manifest was made by the agents of defendant at the forwarding station of defendant and sent to the receiving station, either by mail or accompanying the freight; it is usually made up either from the shipping bills furnished by the shipper, when shipments originate at points on the Union Pacific Railway, or from transfer sheets, when freight is received from connecting lines. The way bill made up and relating to this particular matter, together with entries relating to other shipments, is as follows, viz:

Opinion of the Court, per PECKHAM, J.

KANSAS PACIFIC RAILWAY FREIGHT MANIFEST, FROM ST. LINE TO DENVER, 187 MCH. 9.

| | Consignee and Destination. | No. of packages. | Description of articles. | Separate weights. | Aggregate freight. | Rate Prepaid. | ght Collectible. Freight charges, Total. | Received the property against our respective names. |
|---|---|---|---|---|---|---|---|---|
| No. 1123. | | | | | | | | |
| No. of Car. | | | | | | | | |
| Initial. 1742 662 | | | | | | | | |
| Consignor | * * | * | * | * | * | * | * | |
| * * * | * | | | | | | * | |
| "Y" order Hup. Zucca Bros. | Den 100 Bags P Nuts | | | | 10280 | | 20460 146 44955.64 | |
| | Holes in some—cts. wasting | | | | | | | |
| | * | * | * | * | * | * | * | |

Excepting the transfer sheet the defendant received from the Hannibal and St. Joseph Railroad Company no writing or bill of lading or notification as to the ownership or disposition of the goods. The peanuts were delivered to Zucca Brothers, upon their order, without the production or surrender of the bill of lading for the same, and subsequently Weller & Co. demanded them of defendant, or their value, and defendant declined to deliver them or to pay their value.

The defendant at no time prior to the delivery of the goods to Zucca Brothers had actual notice of the delivery of the receipt to Weller & Co., at Norfolk, or of the contents of said receipt, or that the said receipt was held or possessed by any one, and at no time prior to such delivery had it actual notice or knowledge of any right or interest or ownership in the goods, or of their intended disposition, other than as they were notified or had knowledge from the transfer sheet received from the Hannibal and St. Joseph Railroad Company.

The parties also stipulated, as facts in the case, that immediately upon the shipment of the merchandise by the firm of Weller & Co. they drew a draft upon Zucca Brothers for the value of the shipment, and attached the same to the receipt or bill of lading indorsed by Weller & Co., as security for the same. Weller & Co. then procured the draft to be discounted in Norfolk, and, with the bill of lading attached, it was forwarded by the bank in Norfolk to their correspondent in Denver for collection. It was not paid, and thereupon Weller & Co. repaid the amount thereof to the bank, and received it and the bill of lading back.

It was also stipulated that no evidence was offered tending to prove that the defendant or the original or any carrier of the merchandise had any knowledge or notice of the transactions of Weller & Co. in relation to the draft, its discount or the disposition made by them of the receipt or bill of lading, or any of the facts in relation to the bill of lading hereinbefore set forth under the stipulation.

The plaintiff, as assignee, brought this action to recover of

the defendant the value of the peanuts as for a conversion thereof, upon the theory that defendant had made an illegal delivery of the goods to Zucca Brothers without the production of the bill of lading. He recovered at the Circuit but the judgment was reversed at the General Term, and a new trial ordered, and the plaintiff appealed from that order to this court.

The question to be decided here depends upon what are the duties of a common carrier regarding the delivery of goods which he has undertaken to transport; and, also, what is the proper construction of the bill of lading.

It has been stated that too great caution cannot be exercised by the carrier in respect to the right of the person to whom delivery is made. No obligation of the carrier is more rigorously enforced than that which requires delivery to the proper person, and the law will allow, in fact, of no excuse for a wrong delivery, except the fault of the shipper himself, and when there is any doubt, and it can be determined by documentary evidence, its production should be required. (Hutchinson on Carriers, 130; Angell on Carriers [5th ed.], 324.) Bills of lading are now quite as universally issued by carriers by land as by water. In this case the first carrier was by water, and such carrier did actually issue a bill of lading, a copy of the material portion of which has already been given. And it has been stated too that it is the duty of a carrier to ascertain whether a bill of lading was delivered to the shipper, and if so, he should retain the property until demanded by one claiming under that title. (*City Bank* v. *R., W. & O. R. R. Co.*, 44 N. Y. 136; *Howard* v. *Shepard*, C. B. 9 M. Gr. & Scott, 297; *Tindall* v. *Taylor*, 4 El. & Bl. 219.)

This defendant received from its immediate predecessor goods marked " Y " Denver, Colorado. The address upon the goods themselves, therefore, gave no notice as to whom the consignee was. There was a mere mark of identification upon them, together with a statement of their destination as Denver, Colorado. Something further was necessary in order to determine to whom delivery should be made. The only

other source of information then in the possession of the defendant at Denver was the transfer sheet which it had received from the preceding carrier, which contained the statement above quoted. By the transfer sheet it was stated "Consignee ' Y,' order Hup. Zucca Bros., Denver, Col." The word "notify" in the original bill of lading had become "Hup." in the transfer sheet. Whose fault it was does not appear, but, from facts in the case, it can be said that it was not that of the defendant, nor of the plaintiff's assignors, for it occurred before the goods came to the defendant, and it was in papers which plaintiff's assignors had nothing to do with. It may be noticed, however, that in defendant's way-bill, which was made from the transfer sheet in the column headed "Consignee and Destination," no consignee is mentioned. It is simply "Den. 100 bags P. Nuts. Holes in same, cts. wasting." This is some evidence that it did not regard Zucca Brothers under the language of the transfer sheet as really the consignees. Its way-bill was made up from the transfer sheet, and it evidently was supposed by the person who made it up that, at least, the language of the transfer sheet was too blind to show, beyond doubt, that Zucca Brothers were such consignees. The information which the defendant procured, therefore, as to the consignee, was of a doubtful nature, so far as the transfer sheet was concerned. Being thus doubtful, it would seem a most negligent act to deliver the goods to persons named in that transfer sheet who did not plainly appear to be the consignees. Under such circumstances it would seem that a delivery should be at the peril of the carrier. He could protect himself perfectly well by refusing to deliver until a bill of lading should be presented and delivery made in accordance therewith.

If there were no bill of lading, inquiry would develop that fact, and in all probability would also show who was the proper party to whom to make delivery. Until this was done the goods could be properly placed in store, as was stated to be the true course in *Bank* v. *Bissell* (72 N. Y. 615). Our factors' act makes it the duty of a carrier, etc., not to deliver

goods except upon production and cancellation of the bills of lading, and, for a delivery to a consignor without the production of the bill of lading, which provided for a delivery to him, but which he had in the meantime indorsed and negotiated, the carrier was held liable to the holder of the bill. (*Colgate* v. *Penn. Co.*, 102 N. Y. 120.)

If this delivery had been made in this State, therefore, there would have been no doubt of the propriety of the recovery in this action, assuming that Zucca Brothers were not the consignees. We think that the common law makes it the duty of the carrier to deliver in accordance with the bill of lading, and if delivered without it the carrier runs the risk of showing a delivery in accordance with its directions.

It is argued here that, even by the terms of the original bill of lading, Zucca Brothers were the consignees, and that being such they were presumptively the proper parties to whom to make delivery, and that there was no written, or any, notification to the contrary, and, hence, defendants were justified in such delivery.

We do not agree to the correctness of this construction of the bill of lading. It acknowledges the receipt of the goods, their weight, and states the amount of freight to their destination, Denver, Col., and says the goods are marked " Y— order, notify Zucca Bros."

Here is no statement that Zucca Brothers are the consignees. The very presence of the word *notify*, in its relation to them, shows that they are not intended as the consignees. If they were, the word is wholly unnecessary. It is the duty of the carrier to notify the consignee of the arrival of the goods. (*Price* v. *Powell*, 3 N. Y. 322.) To place in the bill of lading a direction to notify certain persons to whom, if consignees, it was the carrier's duty to deliver, or at least to notify of the arrival of the goods, is a plain notice that (in the absence of further directions) they are not the consignees.

In this bill no one is named as consignee, and that makes it obvious that no delivery should be made to any one who does not produce it. The words, " Y— order, notify Zucca

Bros.," in the order in which they are written, show that the goods are not to be delivered to the order of Zucca Brothers, because after the word " order," in relation to Zucca Brothers, is the word " notify," which notification is all the duty the defendant had to perform under the bill. The word " order," therefore, must relate to what preceded, and it must have meant that delivery was to be made to the order of the consignors, or else to the order of " Y," which, being altogether fictitious, does not mean to the order of Zucca Brothers unless they produce the bill of lading. Zucca Brothers not being the consignees, therefore, all the cases showing that *prima facie* the consignee is the owner, and a delivery to him protects the carrier, unless he has been notified to the contrary, do not apply here.

The opinion of the learned judge at the General Term proceeds, as it seems to us, upon the erroneous theory that the defendant was only bound to know what was imparted to it by the directions on the goods and the papers it received from its immediate predecessor, and that from such papers it discharged its obligations by delivering to Zucca Brothers. Even on the papers received from the Hannibal and St. Joseph Railroad, we do not think the defendant was justified, without inquiry, in making the delivery, and we do not think that a carrier situated like defendant can safely rely upon the papers received from its immediate predecessor, when it delivers without a bill of lading (where one was made out) and to the wrong person, although justified in its delivery by the papers received from its predecessor, which differed, as to the consignee, from the person named in the bill. These papers are made out for the convenience of the carriers as between themselves. The owner or consignor of the goods has nothing to do with them, and probably never sees them. If he has placed a direction upon the property, showing where it is to be transported, and obtained a bill of lading for it, he has the right to assume that delivery will only be made in accordance with the terms of the bill, and the duty of the carrier is only thereby discharged.

In this case, as Zucca Brothers were not consignees, etc., the whole loss was sustained by the negligence of the defendant in not demanding the bill of lading before delivering the property, which bill Zucca Brothers could not have produced unless they had paid the draft which accompanied it. By neglecting this plain duty, the defendant caused the loss, and by failing to deliver on plaintiff's demand it has converted the goods, and it should, therefore, be responsible for their value.

The order of the General Term reversing the judgment of the Circuit and granting a new trial should be reversed, and the judgment at Circuit affirmed, with costs.

All concur, except DANFORTH, J., not sitting.

Judgment reversed.