each of the jurors *"at the end of the trial."* It seems to me, there-fore, quite obvious that if the trial of an action is adjourned beyond the date for the filing of his report, and the clerk makes his return in pursuance to the provision of section 143 of the Municipal Court Code, that the statute does not provide a method how the "server" and the "jurors" shall be paid the fees therein stated, or who shall pay them, or where the money shall be taken from to pay them.

I am therefore of the opinion that the purpose of this section is that the clerk shall be the custodian of the jury fee, and out of that he shall pay the server and jurors at *"the end of the trial."* To me it is apparent that it was not the intention of the Legislature that the jury fee should become a part of the general fund of the city treasury, and the remaining question is: What becomes of the jury fee that is paid in the event that there be no "end of the trial" within the mean-ing of the statute—in other words, where no issue is litigated, as by way of settlement or discontinuance? Clearly it was not the intention of the Legislature that it should be forfeited and become a part of the general fund of the city treasury, for if that was its intention it seems to me it would have provided a method by which the server and the jurors shall be paid the fees therein stated. I am therefore con-strained to hold that in a case where the jury fee has been paid and not exhausted—that is, no jury summoned in the case—and the action is settled or discontinued before trial the party paying the jury fee to the clerk is entitled to its return, for the reason that the contingency for depositing it for the special purpose referred to in the statute did not arrive, and it did not become a part of the fund for which the clerk must account to the city treasury monthly.

From these observations I am of the opinion that the jury fee may be recovered.

---

(95 Misc. Rep. 498)

## MAYER v. SOUTHERN PAC. CO.

(Municipal Court of City of New York, Borough of Manhattan, Fifth District.

May 5, 1916.)

1. COMMERCE ⬥⟷8—EXCLUSIVENESS OF FEDERAL POWER—SUPERSEDING STATE LEGISLATURE.

Under the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]), a shipment of merchan-dise from New York to Texas, being an interstate transaction, is governed by the federal statutes and regulations, which supersede the state laws on the subject.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⬥⟷8.]

2. CARRIERS ⬥⟷83—BILL OF LADING—DELIVERY.

Where goods were billed by a straight bill of lading, and defendant had no notice of any arrangement between consignor and consignee, which could not be inferred from the face of the bill of lading, delivery to the consignee without production of the bill of lading was proper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 308–315; Dec. Dig. ⬥⟷83.]

⬥⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. CARRIERS ⬡⟻51—BILL OF LADING—CONSTRUCTION—CONSIGNEE.**

Where goods were consigned by a straight bill of lading to a symbol, consisting of certain letters, in care of a bank for the alleged consignee, the symbol, being admitted to be a fictitious designation, will be disregarded in the inquiry as to who was designated as consignee.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 149; Dec. Dig. ⬡⟻51.]

**4. CARRIERS ⬡⟻82—CONSIGNEE—DELIVERY.**

Although a third person, in whose name a package is addressed, is clothed with the right to receive the goods, it does not follow that such delivery is the only delivery relieving the carrier from liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 299–315; Dec. Dig. ⬡⟻82.]

**5. CARRIERS ⬡⟻82—BILL OF LADING—CONSIGNEE—NOTICE.**

Where goods were consigned by a straight bill of lading in care of a bank for the alleged consignee, plaintiff having failed to guard himself against delivery before payment by using an order bill of lading, or notifying the carrier that the goods should not be delivered, except upon payment, the defendant is not bound to know the arrangements between consignor and consignee.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 299–315; Dec. Dig. ⬡⟻82.]

**6. CARRIERS ⬡⟻82—BILL OF LADING—CONSTRUCTION—NOTICE.**

The fact that goods were consigned on a straight bill of lading to a symbol in care of a bank for the alleged consignee, the symbol did not put the carrier upon inquiry as to an arrangement between consignor and consignee, as it would have in the case of an order bill of lading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 299–315; Dec. Dig. ⬡⟻82.]

**7. CARRIERS ⬡⟻82—BILL OF LADING—DELIVERY.**

A delivery to the consignee named in a straight bill of lading, containing no notification of an agreement between consignor and consignee, relieves the carrier from liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 299–315; Dec. Dig. ⬡⟻82.]

Action by Max W. Mayer against the Southern Pacific Company. Judgment for the defendant.

House, Grossman & Vorhaus, of New York City (Herman Joseph and Frederick Hemley, both of New York City, of counsel), for plaintiff.

Esselstyn & Haughwout, of New York City (J. Ard Haughwout and Everett J. Esselstyn, both of New York City, of counsel), for defendant.

SPIEGELBERG, J.   The plaintiff seeks to recover the value of merchandise delivered by him to the defendant for shipment from New York City to Ft. Worth, Tex.   According to the bill of lading the goods were consigned to:

"M [M] C % Western National Bank Ft. Worth. for A. J. Cohen 601 May St. Tex."

[1] The goods were delivered to Cohen at Ft. Worth, Tex.   The plaintiff now claims that this was a wrongful delivery, for which the defendant must be held responsible as the initial carrier under the

⬡⟻For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

amendment of 1906 to the Interstate Commerce Law known as the Carmack Amendment (34 U. S. Stat. 584). This being an interstate transaction, it is governed by the federal statutes and regulations, which supersede the state laws on the subject. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Fitch, Cornell & Co. v. Atchison, Topeka & Santa Fé R. R., 170 App. Div. 222, 155 N. Y. Supp. 1079.

At common law the carrier who received goods billed to a named consignee was relieved from further liability by delivery to such consignee, unless the consignor stipulated otherwise in the bill of lading, or the carrier had otherwise notice that the consignee was not the owner. This rule rests upon the presumption that the title to the goods becomes vested in the consignee upon delivery to the carrier. Lawrence v. Minturn, 58 U. S. (17 How.) 100, 15 L. Ed. 58; Southern Express Co. v. Dickson, 94 U. S. 549, 24 L. Ed. 285; Sweet v. Barney, 23 N. Y. 335; Pennsylvania R. R. v. Titus, 216 N. Y. 17, 109 N. E. 857.

Owing to many complaints from shippers concerning the provisions of the so-called uniform bill of lading then generally in use by the carriers, the Interstate Commerce Commission instituted an investigation and inquiry on November 21, 1904. In the Matter of Bills of Lading, 14 Interst. Com. R. 346. As the result of such investigation the Commission, on June 27, 1908, recommended two distinct forms of bills of lading; one being the "straight" and the other the "order" form. After referring to the two forms, the Commission says at page 348:

"They will differ only on the face side; the conditions printed on the back being the same in both cases. These differences will appear upon inspection and need not here be enumerated. The main point in this connection is that the 'order' bill will possess a certain degree of negotiability, while the 'straight' bill will be nonnegotiable and is to be so stamped upon its face. Moreover, and this is a matter of consequence, the order bill of lading will be required to be surrendered upon or before the delivery of the property to the consignee."

Attached to the report the two forms are given in full. The requisite of an order bill of lading is stated to be:

"In connection with the name of the party to whom the shipment is consigned the words 'Order of' shall prominently appear in print, thus: 'Consigned to order of ......' "

And the straight bill of lading must contain the words "not negotiable." Page 352. These two forms were adopted by the carriers. The bill of lading in this case was a straight bill of lading. It was filed with the Interstate Commerce Commission and received its approval.

[2] The goods in question were intended for Cohen, but it is claimed by the plaintiff that delivery was only to be made on payment of the purchase price to the Western National Bank. The defendant had no notice of any arrangements existing between the plaintiff and Cohen, except such as can be inferred from the face of the bill of lading. The goods were delivered to Cohen without the production of the bill of lading, and under the form of bill chosen by the plaintiff there was no obligation for its production as a prerequisite for delivery. The goods having been billed straight, they were properly delivered to

Cohen, if he was the consignee mentioned in the bill of lading. Bank of Batavia v. N. Y., L. E. & W. R. R., 106 N. Y. 195, at p. 201, 12 N. E. 433, 60 Am. Rep. 440; Penn. R. R. v. Titus, 156 App. Div. 830, at p. 835, 142 N. Y. Supp. 43, reversed on another point 216 N. Y. 17, 109 N. E. 857; Ensign v. Illinois Central R. R., 180 Ill. App. 382, at page 386; Judson v. Minneapolis & St. Louis R. R. (Minn.) 154 N. W. 506.

[3] The decision of this case therefore depends upon the question whether Cohen was the consignee designated in the bill of lading. It stands to reason, and it is admitted by both parties, that the symbol "M [M] C" is nothing but a fictitious designation. It does not represent anybody, and must be disregarded in the inquiry as to who is designated as consignee. If authority were needed in support of this proposition it may be found in Furman v. Union Pacific R. R., 106 N. Y. 579, 13 N. E. 587, where the goods were consigned to"Y," and in Weisman v. Phila., Wilmington & Baltimore R. R., 22 R. I. 128, 47 Atl. 318, where the consignee was designated as "S. W."

Disregarding, therefore, the symbol in this case, the goods were consigned to °/₀ Western National Bank for A. J. Cohen. It is stated in 2 Hutchinson on Carriers, § 676, that goods shipped to one person as consignee in care of another, should be delivered to the consignee, and in case he cannot be found, then to the one in whose care they are shipped. The case cited in the text, Schlesinger v. Railroad Co., 88 Ill. App. 273, was followed and quoted with approval in Hoops v. Wells-Fargo & Co., 176 Ill. App. 620.

[4] It may be that the delivery to the Western National Bank would have relieved the defendant from liability. Commonwealth v. People's Express Co., 201 Mass. 564, 572, 88 N. E. 420, 131 Am. St. Rep. 416; Russell v. Livingston, 16 N. Y. 515, 518. But though a third person in whose care a package is addressed is clothed with the right to receive the goods, it does not follow that such delivery is the only good delivery relieving the carrier from liability. U. S. Express Co. v. Hammer, 21 Ind. App. 186, 51 N. E. 953. In this case no good reason existed for the delivery to the Western National Bank, as the address of Cohen was given, with street name and number. The following quotation from Weisman v. Philadelphia, Wilmington & Baltimore R. R., supra, is very appropriate to this case:

"The complaint of the plaintiff is not that the goods were not delivered to the proper person at the proper place, but rather that they were delivered prematurely; his intention being that they should not be delivered until the price had been paid."

[5] In that case the goods were consigned to "S. W., 810 Baltimore Street, Baltimore, Maryland." The letters represented the initials of the plaintiff. The goods were delivered to a person not named in the bill of lading, though living at the address given. It appearing that they were intended for that person, the court held that it was a good delivery. This is the situation here, with the difference that in this case the person to whom the goods were sold and for whom they were intended was specifically mentioned in the bill of lading. The plaintiff could have guarded himself against delivery before payment by using an order bill of lading, or notifying the carrier that the goods

should not be delivered except upon payment. He failed to do so, and, having failed to do so, the defendant is not bound to know the arrangements between the consignor and the consignee. Nebraska Meal Mills v. St. Louis Southern R'y, 64 Ark. 169, 41 S. W. 810, 38 L. R. A. 358, 62 Am. St. Rep. 183; Pennsylvania R. R. v. Titus, 216 N. Y. 17, 109 N. E. 857.

In U. S. Express Co. v. Hammer, supra, the bill of lading read:

"For R. C. Hammer, Indianapolis, Indiana, in care of American Express Co."

The American Express Company having declined to accept the property in controversy, it was held that Hammer was the proper consignee, and that he could maintain an action in replevin against the carrier, upon the ground that as between the carrier and Hammer the latter was entitled to the possession of the goods. If in this case the goods had been billed "for A. J. Cohen, 601 May Street, %. Western National Bank," would there be any doubt as to the identity of the consignee? I cannot perceive how the mere transposition of the words makes the bank, and not Cohen, the consignee.

[6] The learned counsel for the plaintiff maintains that the symbol "M [M] C," together with the designation "%. Western National Bank," should have put the defendant upon its inquiry to ascertain that the Western National Bank had the original bill of lading with draft attached with instructions not to deliver the bill of lading until such time as the draft had been paid, and that under the circumstances it was the duty of the defendant to make delivery only upon surrender of the bill of lading. This argument loses sight of the difference between an "order" and a "straight" bill of lading. The duty which the plaintiff casts upon the defendant would have existed if the plaintiff had chosen an order bill of lading. He relies upon the case of Furman v. Union Pacific R. R., 106 N. Y. 579, 13 N. E. 587. In that case the goods, which were consigned to "Y—— order notify Zucca Bros.," were delivered to Zucca Bros. without the production or surrender of the bill of lading. The court held that Zucca Bros. were not named as the consignees and that the delivery to them was improper. The court says at pages 587 and 588 of 106 N. Y., at page 592 of 13 N. E.:

"In this bill no one is named as consignee, and that makes it obvious that no delivery should be made to any one who does not produce it. The words 'Y—— order notify Zucca Bros.,' in the order in which they are written, show that the goods are not to be delivered to the order of Zucca Bros., because after the word 'order,' in relation to Zucca Bros., is the word 'notify,' which notification is all the duty the defendant had to perform under the bill. The word 'order,' therefore, must relate to what preceded, and it must have meant that delivery was to be made to the order of the consignors, or else to the order of 'Y,' which, being altogether fictitious, does not mean to the order of Zucca Bros. unless they produce the bill of lading. Zucca Bros. not being the consignees, therefore, all the cases showing that prima facie the consignee is the owner, and a delivery to him protects the carrier, unless he has been notified to the contrary, do not apply here."

[7] The learned counsel for the plaintiff seems to be of the opinion that the presence of the letter "Y" determined the decision in the

159 N.Y.S.—7

Furman Case and by analogy argues that "M [M] C" in this case should have put the defendant on its guard; but the reading of the opinion of the Furman Case clearly shows that the decision was not based upon the ground that "Y" appeared as the fictitious consignee, but upon the direction that Zucca Bros. should be notified of the arrival and that the goods were consigned to order. The rule laid down in the Furman Case anticipates the ruling since adopted by the Interstate Commerce Commission above referred to in regard to the difference between a "straight" and "order" shipment. Citing the Furman Case, the United States Supreme Court said in North Pennsylvania R. R. v. Commercial Bank, 123 U. S. 727, at page 736, 8 Sup. Ct. 266, 31 L. Ed. 287, that it was therein held that the placing in a bill of lading a direction to notify certain persons is a plain indication, in the absence of further directions, that they are not the consignees. The elements in the Furman Case are entirely wanting here. The goods in question were, as a matter of fact, intended for Cohen. They were shipped under a straight bill of lading and no notification appeared thereon. I am of opinion that Cohen is the consignee named in the bill of lading, and that the delivery to him relieves the defendant from liability.

Having arrived at this conclusion, it is unnecessary to determine the controversy between the parties whether or not the goods were delivered to Cohen upon the authority of the bank.

The complaint must be dismissed on the merits.