KEOTA PRODUCE COMPANY, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**CARRIERS:** Profits In Re Shipment to Wrong Place. A shipper who orders a carrier to divert a pending shipment from the original point of destination to a new point of destination, in order to avoid a low market at said original point, and to enable the shipper to put the goods in "short-held storage" at said new point, may not, in case his orders are not complied with, recover the profits which he would have made at *some* time in the future, had his orders been complied with, and had he put the goods in storage at the new point of destination.

*Appeal from Mahaska District Court.*—CHAS. A. DEWEY, Judge.

NOVEMBER 16, 1920.

ACTION for damages consequent on carrying goods to the wrong destination and delivering to a person other than consignee, resulted in judgment as prayed. The defendant appeals.—*Reversed.*

*J. G. Gamble, A. B. Howland,* and *Burrell & Devitt,* for appellant.

*Maxwell A. O'Brien,* for appellee.

LADD, J.—The cause was submitted on an agreed state-
ment of fact. Therefrom it appears that plaintiff delivered
to defendant company, June 13, 1917, at Oskaloosa, for
transportation to Egbert & Case, New York City, New York,
119 cases of eggs, each case containing 30 dozen.. After the
eggs had left Oskaloosa, and were in course of transporta-
tion, plaintiff's agent "called upon the defendant's agent
in Oskaloosa, Iowa, and advised the defendant's agent that
plaintiff desired to divert said shipment or car, and in-
formed such agent for the defendant at that time that the
egg market was off in New York, and that plaintiff wanted
the car consigned to itself in Chicago, Illinois, for short-
held storage." Thereupon, plaintiff surrendered the bill of
lading previously issued, and received from defendant an-
other bill of lading, with plaintiff as consignee, and the
destination Chicago, Illinois. Through mistake, for which
defendant is responsible, the shipment was not stopped at
Chicago, but went on to New York City, and the eggs were
delivered to Egbert & Case. This firm sold the eggs,
June 21, 1917, at 31 cents per dozen, or in the aggregate
for $1,106.70, and remitted the same, less freight, cartage,
etc., in the sum of $72.88, leaving $1,033.82 as the net pro-
ceeds. The shipment reached Chicago June 15, 1917, and
on that day the market price of eggs was 29½ cents per
dozen. As their weight was 6,307 pounds, and the freight
rate on the same from Oskaloosa to Chicago was 46 cents
a hundred pounds, as compared with $1.0999 per hundred
pounds to New York City, plaintiff would have realized no
more for them on the Chicago market than he received from
New York City. The eggs cost the plaintiff, on the day of
shipment, 33 5/6 cents per dozen, or $1,207.85. The plain-
tiff, in changing the destination, intended to place the eggs
"in short-held storage" at Chicago, the same being a com-
mon and usual trade practice with merchants engaged in
buying and selling eggs upon the market, as was the plain-
tiff. If he had done so, and so kept them for five weeks, he
might have sold them at 36 cents a dozen, and have received
for the entire consignment the sum of $1,285.20, and would

have received, as is claimed, $145.02 more than he did. For this sum claim was presented to the company, and declined, and thereupon suit was brought. Carrying the eggs to the wrong destination and delivering them to another than the consignee named in the last bill of lading, constituted a conversion of the property. *Brunswick & Co. v. United States Exp. Co.,* 46 Iowa 677; *Angle v. Mississippi & M. R. Co.,* 18 Iowa 555; *Furman v. Union Pac. R. Co.,* 106 N. Y. 579 (13 N. E. 587); 6 Cyc. 472, and cases collected; 10 Corpus Juris 262. As, notwithstanding the conversion, plaintiff received more than the market value of the eggs from the firm other than consignee, to which the goods were delivered, we have only to ascertain whether plaintiff may recover the difference between the amount actually received and what probably would have been received, had the eggs been delivered to it and stored in Chicago during the five succeeding weeks. The measure of damages for the conversion of goods is the same as though lost: that is, their market value at the place of destination named in the bill of lading, with interest, less the cost of transportation. Where delivered to the wrong person, and he subsequently pays the owner, this fact may be shown in mitigation. *Robinson Bros. v. Merchants' D. T. Co.,* 45 Iowa 470; *Jellett v. St. Paul, M. & M. R. Co.,* 30 Minn. 265; *Baltimore & O. R. Co. v. O'Donnell,* 49 Ohio St. 489 (34 Am. St. 579, 21 L. R. A. 117). And, of course, deduction of the amount actually received should be made.

The court seems to have entertained the opinion that, inasmuch as defendant "had defeated the purpose and intention of the shipper, and deprived him of a right which was within the contemplation of both parties, to wit, to store the eggs in Chicago for a reasonable time, to see if the market would react, so that he could sell them for a profit," plaintiff should be allowed, as an element of damages, the profit it would have realized, had the eggs been delivered to the consignee in Chicago and stored five weeks, and then sold on the market. The defendant had notice that plaintiff intended to put the eggs in "short-held stor-

age," owing to the fact that prices were off in New York, but further than this, was not advised. See 3 Hutchinson on Carriers (3d Ed.) 1621. No contract for such storage had been entered into, nor does there appear to have been any design as to the period of storage, and no contract of sale had been made. Surely, it cannot be said, from the mere suggestion to defendant's agent of a purpose to put in "short-held storage," that the parties must have had in contemplation the storage of the eggs for any specified time, or until any specific price might be obtained, or that sale would be made at such price. If so, why not make the time of storage ten days or weeks, or six months even, as well as five weeks? Why select five weeks, save that the price of eggs was up at that particular time? All the carrier was advised of was the purpose of storage. Whether this would be continued a week, five weeks, or six months, was purely a matter of conjecture, as was also the price at which ultimate sale might be made. See *Howard v. Brown*, 168 Iowa 410; *Morgan & Wright v. Sutlive Bros.*, 148 Iowa 318. As viewed from the date of the breach of contract to carry, the element of profits was entirely speculative and uncertain; and for this reason, there can be no recovery, as only prospective profits are claimed, even though it subsequently developed that, had the shipper pursued a particular course,—and he might have pursued several others,—there would have been a profit.

Judgment should have been entered for defendant.— *Reversed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.