THE ANCHOR MILL COMPANY, Appellant, v. THE BUR- LINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Defendant, and THE SIOUX FALLS NATIONAL BANK, Intervener.

**Delivery by Carrier:** SUBSEQUENT ASSIGNMENT OF BILL OF LADING.
1  Delivery of goods by carrier on order of the consignee, without presentation of bill of lading, to one who has paid the consignee therefor, vests title as against one to whom, after such delivery, the consignee transfers the bill of lading.

SAME.  A carrier, by placing a car of goods on a side track at the point
2  designated as most convenient for unloading, by the person to whom the consignee has sold the goods, and directed the carrier to deliver them without presentation of the bill of lading, and by notifying such person thereof, makes a sufficient delivery to him of the goods as against one to whom the consignee thereafter trans- fers the bill of lading.

*Appeal from Linn District Court.*—HON. WILLIAM G. THOMPSON, Judge.

TUESDAY, MAY 18, 1897.

PRIOR to October 6, 1894, the Anchor Mill Com- pany, of Cedar Rapids, Iowa, had contracted with the Lacey Grain Company, of Sioux Falls, S. D., for the purchase of four thousand bushels of wheat, which the latter company began shipping about September first, and on that day wrote to the plaintiff: "As cars of wheat are liable to arrive there ahead of draft, we inclose you an order on the agent to deliver you grain billed to us without presentation of bill of lading."

The following is the order inclosed: "Sioux Falls, So. Dak., September 1, 1894.    Agent B., C. R. & N. R'y, Cedar Rapids, Iowa — Dear Sir: Please deliver all grain billed to us at Cedar Rapids, Iowa, to the Anchor Mill Co., without presentation of bill of lading: Yours truly, The Lacey Grain Co." This order was filed with the agent of the defendant railroad company at Cedar Rapids, and the wheat, prior to that in controversy, delivered to the plaintiff in pursuance thereof. The car load involved in this action arrived at Cedar Rapids October 5, 1894, at 5:10 P. M., and was placed by the defendant on the side track on Fourth avenue. Hershey, an employe of the defendant, whose duty it was to look after the cars, found this car on such track at about 7 A. M., October 6, and reported it there to Fox, chief clerk of the local freight department of defendant, who notified the plaintiff before 9 A. M. that the car had been placed on the side track for it. All cars of wheat were placed there at the request of plaintiff, as the most convenient place for unloading. On the tenth of October, the defendant received notice from the Sioux Falls National Bank that it held the bill of lading, and claimed the wheat, and thereupon notified the plaintiff not to take it. The plaintiff, however, took a part of the wheat, and defendant then removed the car back to its yards. Plaintiff thereupon began this action, claiming to be the owner thereof. The wheat was shipped from Trosky, Minn., to the Lacey Grain Company, consignee, October 2, 1894. The bill of lading was in the usual form, and on the back was indorsed: "Deliver to Anchor Mill Co. The Lacey Grain Company." During banking hours, October 6, 1894, and about 2 P. M., the Sioux Falls National Bank bought a draft of three hundred and twenty-five dollars of the Lacey Grain Company, and the latter transferred to said bank, by delivery, the bill of lading

of this car load of wheat. The bank filed its petition of intervention, claiming the wheat under such bill of lading. After all the evidence was introduced, the court, on motion of intervener, directed the jury to return a verdict finding the Sioux Falls National Bank entitled to the possession of the property in controversy, and afterwards rendered judgment on such verdict. Plaintiff appeals.—*Reversed.*

*Rothrock & Grimm* for appellant.

*J. C. Leonard* and *S. K. Tracy* for appellee railroad company.

*Preston, Wheeler & Moffitt* for appellee intervener.

LADD, J.—The main question to be determined in this case is whether the car load of wheat had been delivered to the plaintiff before the bill of lading was transferred to intervener. There is little or no conflict in the evidence. The wheat was shipped by J. H. Denhart & Son, from Trosky, Minn., October 2, 1894, to the Lacey Grain Company, as consignee, at Cedar Rapids, over the Burlington, Cedar Rapids & Northern Railway. The agent at Cedar Rapids had an order from the consignee to deliver all grain billed to it at Cedar Rapids to the plaintiff without presentation of the bill of lading. When the car load in controversy arrived, it was placed on the side track on Fourth avenue. Fox, agent of defendant, testified: "I was conversant at that time with the arrangement between the railway company and the Anchor Mill Co. as to delivery of their cars of wheat. In pursuance of this written order, I had car No. 4,966 delivered upon the Fourth avenue side track by the general request of the Anchor Mill Co. to have their cars placed there. The Anchor Mill

Co. was notified by the railway company of the fact that this car was placed on that side track on the morning of the 6th." There are four side tracks on Fourth avenue, from which cars are loaded and unloaded. The Lacey Grain Company had sold plaintiff four thousand bushels of wheat, and, on shipments previously made, had overdrawn its account. October 1 it advised plaintiff: "We will allow the next car or two of wheat to go forward without any draft against them, in order to balance this overdraft." So the wheat had been paid for. Some question is made in argument as to whether the railway company was bound to deliver the wheat on the written order without presentation of the bill of lading. As the company did deliver in pursuance of that order, we need not inquire whether it was bound to do so. "Every delivery must be made to the right person, at a reasonable time, at the proper place, and in a proper manner." Hutchinson, Carr., section 340, and cases cited. What will constitute a delivery must of necessity depend upon circumstances. The railroad company, in order to deliver this wheat in bulk, certainly could not be expected to unload it. All that could be required was that it place the car where it could be safely and conveniently unloaded by the party entitled to it, and notify him of its action. When it had done this, its duties as a common carrier ended. *Independence Mills Co. v. Burlington, C. R. & N. R'y Co.*, 72 Iowa, 535 (34 N. W. Rep. 320). In this case the car was put at the very place plaintiff had requested, for the purpose of being unloaded, and the plaintiff duly notified of its action. What more could the railway company do to complete the delivery? It had delivered the car, in so far as it was capable of delivery, to the party entitled thereto, as directed by the consignee, within a reasonable time, at the very place agreed upon, and in the only manner practicable. Nothing

more could have been done. The delivery was complete, and the railroad company had lost control of the wheat before it received notice of intervener's claim; and, when it resumed possession, did so without any right or authority. The defendant's argument is based upon the proposition that where possession is obtained by a trick or fraud, or promise to pay freight as soon as delivery is made, which is not done, the carrier does not lose his lien for freight, but may retake possession. Hutchinson, Carr., section 480. The facts in this case present no such question. William Fulton, secretary of the Anchor Mill Company, testified: "The arrangement was that we weigh the cars of wheat, report weight of cars to the railway company. They would make out a bill, and we would give them a check. We had never, prior to the time they delivered the grain on Fourth avenue side track, weighed the wheat, nor the company made out the bill for freight." And this is undisputed. Besides, the company took possession of the car on account of the claim of the intervener, and not because of the non-payment of freight. We think the delivery of the car load of wheat to the Anchor Mill Company was made before 9 A. M., October 6, 1894; and, having paid therefor, it became the absolute owner of the wheat so delivered before the purchase of the bill of lading by the intervener.

II.   It is insisted by appellee that the wheat could only be delivered by transfer of the bill of lading. *Garden Grove Bank v. Humeston & S. Railway Co.*, 67 Iowa, 533 (25 N. W. Rep. 761), is relied on. That the bill of lading represents the property while being transported, and its assignment operates as a symbolical delivery thereof, cannot be doubted. *Weyand v. Railway Co.*, 75 Iowa, 579 (39 N. W. Rep. 899); *Ayres Weatherwax & Reed Co. v. Dorsey Produce Co.*, 101 Iowa, 141 (70 N. W. Rep. 111). The bill of lading, however,

is not a negotiable instrument, and its transfer carries with it only such interest in the property as the assignor might transfer by actual delivery.

Certainly, the assignment of the bill of lading is not more effective in transferring title than manual change of possession. The intervener obtained no better title to the wheat than the Lacey Grain Company had when it parted with the bill of lading. *Haas v. Railroad Co.*, 81 Ga. 792 (7 S. E. Rep. 629); *Tison v. Howard*, 57 Ga. 410; *Shaw v. Railroad Co.*, 101 U. S. 557. Prior to that time the railroad company had fully performed its duties as common carrier by delivering the wheat to the plaintiff in pursuance of the order of the consignee and the indorsement on the back of such bill. The title to the wheat had passed to the plaintiff, who had already paid for it. The bill of lading had served the purposes of its existence, and was no longer a thing of value. Such a rule only requires that the purchaser of a bill of lading know the title to the property of the person from whom he buys. This is the general rule, and we know of no reason for making an exception in favor of one claiming possession by constructive instead of actual delivery of property. It follows that the district court erred in directing a verdict in favor of the intervener, and its judgment must be REVERSED.