## CHICAGO PACKING & PROVISION CO. *v.* SAVANNAH, FLORIDA & WESTERN RAILWAY CO.

1. When goods are shipped under a bill of lading stipulating for their delivery to the order of the consignor, an indorsement by him upon the bill of lading, directing delivery to a third person, or to his order, for collection, in effect makes such person the consignee; and although such bill of lading may further stipulate that its surrender shall be required before the delivery of the goods at destination, delivery by the carrier without requiring such surrender, if made to such consignee, or upon his order, or by his authority, involves no breach of duty to the consignor.
2. Where in such case the bill of lading was indorsed to a partnership, the carrier was authorized to deliver upon a written order signed by one of the partners, though he may have privately intended the signing of the order to be his individual act only, the carrier's agent having no information to this effect, and the circumstances being such as to warrant him in treating the giving of the order as the act of the partnership.
3. The evidence in the present case demanded a verdict for the defendant.

Argued October 23,—Decided November 29, 1897.

Complaint for damages.    Before Judge Spence.    Dougherty superior court.    April term, 1897.

*Wooten & Wooten*, for plaintiff.
*Erwin, duBignon, Chisholm & Clay*, for defendant.

LUMPKIN, P. J.    This was an action by the Chicago Packing & Provision Co. against the Savannah, Florida & Western Railway Co., for damages alleged to have been occasioned to the plaintiff because of a wrongful delivery by the defendant of certain meat to N. L. Ragan.    The court directed a verdict for the defendant, and the plaintiff excepted.    It appeared at the trial, that the plaintiff had shipped the meat in question to Albany, Ga., consigned to its own order, under bills of lading each of which contained a direction to notify Ragan, and each stipulating that its surrender should be required by the carrier before delivery of the goods at destination.    Upon each of these bills of lading was an entry in the following words, signed by the plaintiff: "Deliver to Hobbs & Tucker, or order, for collection."    Clark, the agent of the railway company at Albany, without requiring a surrender of the bills of lading, delivered the meat to Ragan upon written orders which were as follows: "E. N. Clark, agent:   Let N. L. Ragan have car meat on dray track, and I will be responsible for B/L.    May 18th, 1893.    A. W. Tucker."    "Ed. N. Clark, agent: Please let Nevil [meaning Ragan] have one car of meat, and I will stand for B/L.    Yours truly, A. W. Tucker."    Tucker testified, in substance, that in giving the above orders to Ragan, it was his private intention that so doing should be regarded as his individual acts, but he did not so inform Clark, the agent. The circumstances, as disclosed by the evidence, were such as to warrant the latter in treating the giving of these orders as acts of Hobbs & Tucker, that firm being at the time in possession of the bills of lading.    It further appeared that at the time the meat was delivered to Ragan, he had not paid to Hobbs & Tucker drafts drawn on him by the plaintiff for the price of the meat, which drafts had been forwarded to Hobbs & Tucker along with the bills of lading.

Upon substantially the same state of facts as above recited,

this same plaintiff had previously brought an action of bailtrover against Hobbs & Tucker, and obtained a judgment thereon, which was affirmed by this court. See 98 *Ga.* 576. The question now is: Was the railway company also liable to the plaintiff?

. If a natural person consigned goods to his own order under a bill of lading of the character above indicated, and called in person upon the carrier's agent at the point of destination, demanded a delivery of the goods and thereupon received the same, it certainly could not be questioned that, as between the consignor and the carrier, such delivery would be good, and would free the carrier from further liability to the consignor, although the bill of lading may not have been produced and surrendered in accordance with the stipulation therein contained. While in such a case the carrier might not, as against one who had in good faith and in the due course of business obtained the bill of lading properly indorsed, be protected by a delivery to the original consignor, surely the latter would have no cause of complaint against the carrier. If such a consignor could thus obtain a delivery of the goods to himself in person, what difference, in principle, would it make if, instead of doing this, he by a written order directed delivery to another, who obtained the goods upon such order without producing and surrendering the bill of lading? In either case, looking at the transaction with reference only to the consignor and the carrier, the latter would have done all that the former had any right to require of it. In other words, the stipulation in such a bill of lading requiring its surrender upon delivery of the goods is for the benefit of the carrier, and not that of the consignor. The plaintiff in the present action was not a natural person, but it made Hobbs & Tucker its agents, and directed delivery to them, or to their order. Treating the papers signed by A. W. Tucker as orders of the firm, the carrier complied with its contract with the Chicago Packing & Provision Co. when it delivered the meat upon these orders. The effect of the indorsements entered upon the bills of lading was, as between the consignor and the railway company, to make Hobbs & Tucker the real consignees.

In the case of *Boatmen's Savings Bank* v. *Western & Atlantic R. Co.*, 81 *Ga.* 221, this court held that where goods were shipped to the consignor's order, the bill of lading being indorsed in blank and negotiated for value as security for a draft drawn by the consignor on a third person, he being the party to be notified of the shipment, the carrier had no right, as against an innocent holder of the bill of lading who had acquired the same in due course of trade, to make delivery to such third person without his producing the bill of lading, "*or authority from the holder thereof.*" Here was a clear recognition of the protection which the law gives to the innocent holder of a bill of lading thus acquired, and also a strong intimation that authority for delivery from the legal holder or owner of the bill of lading would be sufficient to authorize delivery, without a production of the bill of lading itself. It was, however, insisted here that, even assuming the above reasoning to be perfectly sound and correct, it was not strictly applicable to the present case, because the indorsement, directing delivery to Hobbs & Tucker or order, was not general in its terms, but qualified by the use of the words "for collection." In this connection, the position was taken that the order for delivery to Hobbs & Tucker was not absolute, but to a certain extent conditional, and therefore the railway company could not safely and lawfully make delivery upon the order of this firm, unaccompanied by the bills of lading, without first ascertaining that Hobbs & Tucker had actually collected from Ragan the price of the meat. The contention was, that Hobbs & Tucker were special agents of the Chicago company, and that, in dealing with them as such, the railway company was bound to inquire into the extent of their authority. We do not think this is a case where the rule thus sought to be invoked is applicable. Hobbs & Tucker, under the facts recited, were the agents of the plaintiff through whom it sought and obtained delivery to itself under the terms of its contract with the carrier. The railway company did exactly what it agreed to do when it delivered the goods to the order of Hobbs & Tucker, and it had no concern with the plaintiff's reasons for giving this order, or its purpose in so doing. The important right reserved by the plaintiff in its contract with the carrier

was to name the person to whom delivery should be made in its behalf at the point of destination; and accordingly, the plaintiff had no right to impose any obligation upon the carrier with reference to delivery upon its order, further than that which the law imposed upon the carrier of exercising due diligence in ascertaining the identity of the person to whom delivery was directed to be made.   Nor would it seem that the plaintiff ever contemplated that the defendant should do more than it was under its contract bound to do.   The words "for collection" were vital as between Hobbs & Tucker and the plaintiff, as restrictive of the firm's authority to dispose of the goods after receiving them from the carrier, but were not even intended as qualifying the right of the firm to demand of the carrier a full and complete possession of the goods.   In other words, the collection which Hobbs & Tucker were to make from Ragan was a matter to be attended to by them, as the agents of the plaintiff, after they had obtained possession of the meat. It was their duty to get the meat and hold it till Ragan paid for it; but this was a matter of no concern to the railway company.   It certainly was not the consignor's resident collecting agent at the point of destination; the drafts were not sent to it; the bills of lading were not intrusted to it; and its relation to the transaction was that of carrier only.   In a word, the company was not the plaintiff's agent for any purpose whatsoever, and it never in any manner undertook to vouch for the fidelity of Hobbs & Tucker, who were the trusted agents of the plaintiff, and to whom alone it looked for the collection of its money before its meat went into the possession of Ragan.   In any view of the matter, the familiar rule that where one of two innocent persons must suffer loss, it should fall upon the party who put it in the power of the wrong-doer to occasion the loss, is applicable here.   The loss in the present case was not occasioned by the failure of the railway company to require the production and surrender of the bills of lading, but by the faithlessness of Hobbs & Tucker to their principal.   Indeed, after the orders for the meat were given to Ragan, Hobbs & Tucker really held the bills of lading for the protection of the carrier, and the only risk it took was the possibility of that firm's indorsing the same

to bona fide purchasers for value. In not insisting upon the surrender of the bills of lading as a prerequisite to delivery, the carrier simply waived a right which, as against the original consignor, it had reserved to itself under the terms of the contract of shipment.

We are aware that in some jurisdictions there are decisions at least intimating, if not directly holding, contrary to some of the views above expressed; but notwithstanding this, we are confident that we have ascertained and announced the true law of the present case.

As to the fact that Tucker alone signed the orders upon which Clark, the agent of the railway company, delivered the meat to Ragan, it is only necessary to say that, upon the identical state of facts here presented with reference to this matter, this court, in the case first cited supra, held that the acts of Tucker in giving the orders in question were properly treated by the agent to whom they were addressed as the acts of the firm itself.

*Judgment affirmed. All the Justices concurring.*