SCHWARZSCHILD & SULZBERGER COMPANY, Appellant, v.
SAVANNAH, FLORIDA & WESTERN RAILWAY
COMPANY, Respondent.

St. Louis Court of Appeals, November 15, 1898.

Common Carrier: DELIVERY: SHIPPER OF GOODS: BILL OF LADING. A
common carrier who surrenders goods before receiving their symbolical representative, the bill of lading, does so at his peril, still in a
contest between the *shipper* and the *carrier* the latter is fully protected if it can show the former's assent to the delivery.

*Appeal from the St. Louis City Circuit Court.*—HON.
L. B. VALLIANT, Judge.

AFFIRMED AND REMANDED.

KARNES, HOLMES & KRAUTHOFF, BOYLE, PRIEST &
LEHMANN and LON. O. HOCKER for appellant.

"The bill of lading presents the property therein
described, and a delivery of the bill is treated as a sym-

bolical delivery of the property." Bank v. Homeyer, 45 Mo. 149; Railway v. Johnston, 63 N. W. Rep. 145; 45 Neb. 57; Furman v. Railroad, 106 N. Y. 579; Railroad v. Stern, 119 Pa. St. 24; Forbes v. Railroad, 133 Mass. 154; The Thames, 14 Wall. 98; Bank v. Jones, 4 Comst. 497; Ober v. Railway, 13 Mo. App. 86. A bill of lading made to "shipper's order" and delivered to the consignor, contemplates the presentment of the bill itself as constituting the "shipper's order." See cases under point I, *supra*. The telegrams offered in evidence did not constitute a "shipper's order" within the meaning of the contract of the bill of lading, and the goods, having been delivered without the shipper's order, were converted by the defendant, and a direction to the jury to return a verdict for the plaintiff was proper. "The delivery of goods by a common carrier to the consignee thereof is made at the peril of the carrier, unless, when made, the consignee surrenders the bill of lading either made or indorsed to himself." Railroad v. Barkhouse, 13 So. Rep. 534; 100 Ala. 543; Weyand v. Railway, 39 N. W. Rep. 899; 75 Iowa, 573; McEntee v. Steamboat Co., 45 N. Y. 34; Railroad v. Stern, 119 Pa. St. 24. Plaintiff's case was made when it proved the consignment to its own order and the delivery to Calvin Carroll. The defense that such delivery was upon the order of the plaintiff was affirmative in its nature and should have been specially pleaded. The answer is in three paragraphs. Guinotte v. Ridge, 46 Mo. App. 254, 262; Hudson v. Railway, 32 Mo. App. 667, 680, 681; approved 101 Mo. 13–29. * * * Defendant having failed to plead the telegrams from Weller to Carroll as an affirmative defense, excusing it from its obligation to deliver the shipment to the holder of the bill of lading, the trial court was right in excluding the telegrams. And its action being correct, the reasons it gave therefor are immaterial. * * * Ittner v. Hughes,

133 Mo. 679–688. "A bill (of lading) directing delivery of the vendor's order is *prima facie* evidence that he does not intend that the title shall pass to vendee, and notice to the carrier that he must not deliver to the consignee without the bill properly indorsed by the consignor." Elliott on Railroads, sec. 1426. "Where a bill of lading is issued for delivery to the shipper's order, the carrier is bound to deliver to no one who has not that order." Porter on Bills of Lading, sec. 414. "When goods are shipped deliverable to the order of the consignor for and on account of the consignee, the carrier can not deliver them to such consignee except upon the production of the bill of lading properly indorsed by the consignor." Railroad v. Hartwell, 36 S. W. Rep. (Ky. 1896) 183, 184. Such a direction in the bill of lading does not authorize the carrier to deliver to the party to be notified, without requiring the production of the bill of lading, but, on the contrary, indicates that he is not entitled to delivery except upon their producing the bill." 5 Am. and Eng. Ency. of Law [2 Ed.], 205; Railroad v. Bank, 123 U. S. 727, 736; North v. Merchants' Transp. Co., 146 Mass. 135, 139; Bank of Commerce v. Bissell, 72 N. Y. 615, 616; Furman v. Railroad, 106 N. Y. 579, 687. When the car arrived at Thomasville, Georgia, its contents were the property of plaintiff. Calvin Carroll had no right or title thereto. The defendant, without the knowledge or consent of plaintiff, permitted Carroll to open and enter the car. This, without more, constituted a conversion. "Any wrongful act which negatives or is inconsistent with the plaintiff's right, is *per se* a conversion." Williams v. Wall, 60 Mo. 316, 321. "Any wrongful disposition of property constitutes a conversion." State to use v. Berning, 74 Mo. 87, 95; Allen v. McMonagle, 77 Mo. 478,

481; Warnick v. Baker, 42 Mo. App. 439, 442. "In order for the plaintiff to make a case for conversion, he must aver and prove that the defendant has used or appropriated the property in such a way as to indicate a claim thereto, adverse to the plaintiff's title or ownership." Norman v. Horn, 36 Mo. App. 419, 422. "A conversion may be proved * * * by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owners." Bank v. Metcalf, 40 Mo. App. 494, 502. In considering the defense that the carrier discharged the obligation of its contract to deliver the property to the order of plaintiff, by delivering it to Calvin Carroll, it may be premised: It was the duty of defendant to deliver the goods only upon the order of the holder of the bill of lading. Bank v. Railway, 42 Mo. App. 284; Bank v. Railroad, 62 Mo. App. 531; Railroad v. Fowler, 34 S. W. Rep. (Tex. Civ. App.) 661; Bank v. Railway, 132 Mo. 492; Union Stock Yards Co. v. Westcott, 65 N. W. Rep. 419; 47 Neb. 300. No obligation of the carrier * * * is more strictly enforced. Railroad v. Bank, 123 U. S. 728–734. (Field, J).

Sale & Sale for respondent.

The point now made by appellant that the telegrams offered in evidence were inadmissible because not pleaded can not be raised for the first, time on appeal for the purpose of reversing the action of the lower court. The position of appellant's counsel, sustained at the trial by the court, was that the telegrams were immaterial. The telegrams were admissible under the general denial, if they tended to negative a necessary allegation of the petition, to wit: that defendant had failed to deliver the meat to plaintiff, and had

converted it, and such was clearly their tendency. The telegrams constituted Carroll plaintiff's agent to receive the meat. At all events, defendant having delivered the meat to Carroll upon telegrams from plaintiff directing him to receipt for it, plaintiff is estopped to deny the authority of Carroll to receive it. Hutchinson on Carriers [2 Ed.], sec. 349c; Dobbins v. Railroad, 56 Mich. 522; Brasher v. Railroad, 12 Colo. 384; Bank v. Railroad, 163 Pa. 467; Bank v. N. J. Steamboat Co., 75 N. Y. 510. Even if the delivery to Carroll were wrongful, the subsequent conduct of plaintiff would relieve defendant of any liability to it. See cases under preceding point; also Converse v. Railroad 58 N. H. 521; Railroad v. Sargent, 19 Ohio St. 438; Hutchinson on Carriers, sec. 390, and cases cited. There was no duty resting upon the defendant to require the cancellation or production of the bill of lading. Chicago, etc., Co. v. Railway, 29 S. E. Rep. 698, and cases cited under preceding points. The point now made by appellant that defendant is liable in this action because it permitted Calvin Carroll to inspect the meat is not well taken. *First*, Because the conversion alleged in this petition is the wrongful failure of defendant to deliver the car to plaintiff. *Second*, Because Calvin Carroll, both under his agreement with plaintiff and as a matter of law, had the right as purchaser to inspect the meat before being required to pay for it. Hutchinson on Carriers, sec. 393; Lyons v. Hill, 46 N. H. 39. *Third*, Because if, as we contend, defendant was afterward justified in delivering the meat to Carroll, his having previously been permitted to inspect it would become immaterial.

BOND, J.—Plaintiff, doing business in Kansas City, Missouri, in February, 1895, sold a car load of dressed beef to Calvin Carroll, of Thomasville, Georgia, and

delivered the same for transportation to an initial carrier, taking a bill of lading for a through conveyance of the goods and for their delivery upon the order of plaintiff, with directions on the bill to notify Calvin Carroll. The sale in question was made by one Weller, who was the general representative of plaintiff, with headquarters at Atlanta, Georgia. When the goods reached Thomasville, Georgia, Carroll, who had been permitted to inspect them in the car, wrote Weller that they had arrived in bad condition. Weller answered by two telegrams sent on the same day, to wit:

1. "To Calvin Carroll. Letter received. Use your stuff. Will see you in a day or so."

2. "To Calvin Carroll. Get railroad inspection your car, receipt for same in damaged condition. Will see you Wednesday."

Upon the production of these two telegrams the defendant railway company delivered the meat to the consignee without requiring him to produce the bill of lading issued on its behalf by the first carrier. A draft for the price of the goods with bill of lading attached was not honored by Carroll. After the receipt of the shipment by him he had an interview with Weller and some talk between the two of a settlement of the matter. Nothing was done. Carroll failed in business. Plaintiff brought suit against defendant for a conversion of its goods. On the trial the circuit judge excluded the above telegrams from the evidence; gave a peremptory instruction to find for plaintiff; subsequently set aside the verdict thus rendered for an assumed error in the instruction, from which order plaintiff appealed.

The question for review is, did the court err in granting a new trial. To decide which it is only necessary to determine whether the two telegrams sent by plaintiff's duly accredited agent constituted sufficient

authority for the last carrier to deliver the goods without requiring the bill of lading. For although a common carrier who surrenders the goods *Assignment of errors.* before receiving their symbolical representative does so at its peril, still in a contest between the *shipper* and the *carrier* the latter is fully protected if it can show the former's assent to the delivery. This follows from the rule that no one shall be heard to complain of the doing of an act to which he consented, or as expressed by the maxim *volenti non fit injuria.* Broom's Legal Maxims, side page 268. This idea has been lucidly illustrated in a recent opinion of the supreme court of Georgia, delivered by Lampkin, P. J., Chicago Packing & Provision Co. v. Savannah Railway, 29 S. E. Rep. 698. Of course, if the contest were between the carrier and a transferee in good faith of the bill of lading, the carrier could not excuse delivery before receipt of the bill of lading by any authority from the shipper or any other person except the holder of the bill or some one authorized to speak for him. Bank v. Railway, 132 Mo. 492. In the case at bar no such intervening rights have accrued. There is no evidence showing that the bill of lading was ever transferred,—in fact, it is practically admitted to be in the hands of the plaintiff because of its dishonor by the purchaser of the goods on account of their bad condition. The defendant carrier delivered the goods to such purchaser upon two telegrams from the agent of the plaintiff, whose power to act for it in the matter is undisputed. The only question left is did the telegrams manifest consent on the part of plaintiff to the delivery? We do not see how any other rational construction can be placed on the language used; under the circumstances existing at the time they were exhibited to the carrier's agent. When they were thus shown the carrier still had possession of the goods with

knowledge that Carroll was the consignee, for the bill of lading, though to "shippers order" contained a direction to notify Carroll. When, therefore, he presented the telegrams in question the defendant saw a further recognition of him as the consignee of the goods with authority "to use your stuff" and "get railroad inspection, and "receipt for same in damaged condition." As he could not *use* the goods unless they were delivered to him, the first telegram clearly implied his right to receive them; but the second telegram went further, it expressly provided for the delivery of the goods to him by the carrier, by directing him to get the carrier's *inspection*, and "receipt for the same in damaged condition." This could not possibly have been done under the circumstances surrounding the parties at the time without a delivery of the goods for which the bill of lading was given. Our conclusion is that the language of the two telegrams, in the light of the status of the parties, involved a clear assent on the part of the plaintiff to a delivery of the goods by the defendant to the consignee Carroll. The learned trial judge, upon mature reflection, evidently deemed his ruling excluding the telegrams from evidence when offered by defendant on the trial, as erroneous, and that his instruction to find for plaintiff based on such ruling was erroneous. We think he did right therefore in awarding a new trial for error in the instruction given by him. It also seems to us that if it should appear on a new trial that the telegrams in question are genuine and were sent by the duly accredited agent of plaintiff, that there would be little, if anything, left to submit to the jury. The judgment of the trial court awarding a new trial is affirmed, and the cause remanded. All concur.