ST. LOUIS SOUTHWESTERN RY. OF TEX-
AS v. GILBREATH.

(Court of Civil Appeals of Texas. Texarkana.
Feb. 14, 1912. Rehearing Denied
Feb. 22, 1912.)

1. CARRIERS (§ 69*)—CARRIAGE OF GOODS—
ACTION FOR WRONGFUL DELIVERY—PRE-
SUMPTIONS.

An owner of cotton who delivered it to a
railroad for shipment in the name of another
as the shipper, without notice to the company
that the person named was not the shipper,
and who accepted a bill of lading stipulating
in terms that the railroad was to deliver the
cotton as the property of the person named
as shipper, will be presumed, in the absence
of fraud or mistake, to have thereby acquiesced
in the terms of the bill of lading.

[Ed. Note.—For other cases, see Carriers,
Dec. Dig. § 69.*]

2. CARRIERS (§ 76*)—CARRIAGE OF GOODS—
DUTY OF CARRIER IN DELIVERING—CON-
SIGNOR.

The owner of cotton, intending to sell it
to a certain person, delivered it to defendant
railroad for shipment to such person, and, with-
out informing the railroad of his actual owner-
ship of the cotton, accepted a bill of lading
stating that the cotton was received from the
intended buyer, as shipper, consigned to ship-
per's order; notice to be given to him. *Held*,
that by the terms of the bill of lading the rail-
road could transport and deliver the cotton as
belonging to the intended buyer, and that the
owner, as against the railroad, could not as-
sert that he was the consignor or real ship-
per, and hence could not predicate a claim by
himself as owner for the railroad's alleged
wrongful delivery of the cotton.

[Ed. Note.—For other cases; see Carriers,
Cent. Dig. §§ 256–271, 363; Dec. Dig. § 76.*]

3. CARRIERS (§ 83*)—CARRIAGE OF GOODS—
DELIVERY—RIGHT OF OWNER.

A railroad company, which received cot-
ton from the owner for transportation and is-
sued a bill of lading naming an intended buyer
as the shipper and consignee, and in the ab-
sence of any outstanding order of the ap-
parent shipper, could, as between itself and
him, waive a stipulation in the bill of lading
that on a shipment to shipper's order the bill
of lading properly indorsed was to be sur-
rendered before the consignee was entitled to
receive the goods, and that as to all other
shipments the bills, on demand of the carrier,
should be surrendered, without subjecting it-
self to liability to the owner.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 313; Dec. Dig. § 83.*]

4. CARRIERS (§ 83*)—CARRIAGE OF GOODS—
DELIVERY BY CARRIER—RIGHTS OF OWNER
AND SHIPPER.

The owner of cotton delivered it to de-
fendant railroad without informing them of
his ownership, and accepted a bill of lading
stating that the cotton was received from his
intended buyer, designated by name, consigned
to shipper's order, shipper to be notified, and
providing that in shipper's order shipments the
bill of lading properly indorsed must be de-
livered to the carrier before consignee would
be entitled to receive the goods, and that up-
on such delivery the contract should become
the sole property of the carrier. The cotton
was transported, the consignee notified, and
the cotton afterwards delivered to the con-
signee's agent without surrender of the bill of
lading. *Held* that, as the intended buyer was
both the consignee and the consignor, the rail-

road was bound to respect his apparent own-
ership, and, there being no outstanding order
of the consignee, to deliver it to him, and that
the owner, who retained the bill of lading, had
no action against the railroad for wrongful de-
livery.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 308–315; Dec. Dig. § 83.*]

5. CARRIERS (§ 83*)—CARRIAGE OF GOODS—
DELIVERY—RIGHT CONSIGNOR.

Where a carrier, under the terms of its
bill of lading and without knowledge as to the
actual ownership, made a rightful delivery of a
shipment of cotton to the named consignee, the
consignee's indorsement of the bill of lading
thereafter to the actual owner conferred upon
the owner no rights as against the railroad
company for its failure to require surrender of
the bill of lading upon delivery, as provided by
the bill of lading.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. § 313; Dec. Dig. § 83.*]

Error from District Court, Upshur County;
R. W. Simpson, Judge.

Action by L. M. Gilbreath against the St.
Louis Southwestern Railway Company of
Texas. Judgment for plaintiff, and defend-
ant brings error. Reversed, and judgment
rendered for defendant.

The defendant in error sued to recover the
value of 12 bales of cotton alleged to have
been misdelivered by the railway company on
a shipment made to shipper's order, and in a
trial to the court without a jury judgment
was given in his favor for the value of the
cotton. The defendant in error, on December
31, 1909, contracted to buy from W. E. Cros-
by at Gilmer 12 bales of cotton. It was his
intention at the time of the purchase of the
cotton to make sale of the same to Jackson,
Bell & Co., living at Greenville but carrying
on a cotton business through agents at Sul-
pher Springs, Tex. No sale of the same to
this firm, however, had actually been made
at the time of the purchase. On the same
day of his purchase the defendant in error
delivered the cotton to the agent of the plain-
tiff in error at Gilmer, and received and ac-
cepted from the agent a bill of lading there-
for reciting the agreement of the usual bill
of lading to transport the cotton from Gil-
mer to Sulphur Springs, Tex.; both points
being on the same railway. The bill of lad-
ing stated that the cotton was "received from
Jackson, Bell & Co. by the St. Louis South-
western Railway Company of Texas; con-
signed to shipper's order, notify Jackson,
Bell & Co., Sulphur Springs, Texas." The
bill of lading had, besides others, the follow-
ing provision: "(6) In shipper's order ship-
ments this bill of lading properly indorsed
must be delivered to the delivering carrier be-
fore the consignee is entitled to receive the
goods, and upon such surrender the contract
shall become the sole property of the carrier.
In the case of all other shipments this bill of
lading, when demanded by the delivering car-
rier, in order to prevent a possible violation

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

of the interstate commerce act as amended, for the wrongful delivery of the freight, shall be surrendered." At the time of the delivery of the cotton to the agent at Gilmer the cotton was tagged by the defendant in error with the cotton tags of Jackson, Bell & Co. The defendant in error did not give notice to the agent of the railway company at Gilmer that he owned or had any interest in the cotton, nor explain that Jackson, Bell & Co. were not the owners of the cotton. The cotton arrived in due course of transportation at Sulphur Springs on January 3, 1910. After its arrival at Sulphur Springs the cotton was placed by the agent of Jackson, Bell & Co. at the compress there for compressing, and compress receipts for the several bales of cotton were executed and delivered to the agent of the railway company and held by him for the cotton while being compressed. It appears that all cotton for Jackson, Bell & Co. arriving at Sulphur Springs was compressed, as done in this instance, and that it was usual and customary so to be done and to be delivered by the railway company for. the purpose; and defendant in error knew this. On January 17th the agent of the railway company at Sulphur Springs delivered to Mr. Mitchell, the cashier of one of the banks there, for Jackson, Bell & Co., the compress receipts; and Jackson, Bell & Co. sold the cotton to M. H. Wolff & Co., and M. H. Wolff & Co., on surrender of the compress receipts, got the cotton from the compress company and afterwards shipped it out. At the time of the delivery of the compress receipts, by which means the possession of the cotton was obtained, was made to Mitchell as agent of Jackson, Bell & Co. in respect thereto, the agent of the railway company at Sulphur Springs did not receive nor take up the bill of lading from Mitchell or any one else. It appears that several days before the delivery on the 17th, Mitchell, for Jackson, Bell & Co., had demanded the cotton, and the agent of the railway company exacted the bill of lading. Effort was made to locate the bill of lading before the delivery. The agent at Sulphur Springs wired the agent at Gilmer, and the reply was the bill of lading was sent out through the usual course. On the 17th Mr. Mitchell handed the railway agent at delivering point a letter addressed on its face to the agent of the plaintiff in error at Sulphur Springs, reading: "Dear Sir: This is to certify that I shipped twelve bales of cotton from Gilmer to Sulphur Springs, Texas, over your road, shipper's order, notify Jackson, Bell & Co., Sulphur Springs, under company bill of lading 82 draft attached for $784.78 that I received payment for said twelve bales of cotton. Yours truly, Shipper, W. E. Crosby, Cashier of the First National Bank of Gilmer." Upon the strength of this letter and the demand therefor by Mitchell for Jackson, Bell & Co., the agent of the railway company then delivered the compress receipts to Mr. Mitchell for Jackson, Bell & Co. Neither the agent of the railway company at Sulphur Springs nor the agent at Gilmer knew that defendant in error, or any person other than Jackson, Bell & Co. appearing on the bill of lading, owned or had any interest in the cotton, or claimed to hold the bill of lading. It appears that, after receiving the bill of lading from the agent at Gilmer, the defendant in error immediately took the same to the First National Bank of Gilmer and placed it with this bank as collateral security to procure the money necessary to pay off W. E. Crosby, from whom he had bought the cotton. Defendant in error then, several days thereafter, paid the bank and took up the bill of lading from the bank, and it has remained in his possession since and up to the trial of the case. Between January 30th and February 1st, and not before, the defendant in error demanded of the plaintiff in error the cotton. The time of this demand was after the delivery of the cotton to Mitchell for Jackson, Bell & Co., and after it was sold by them to M. H. Wolff & Co. Jackson, Bell & Co. were declared bankrupts after they sold the cotton to Wolff & Co. Before filing the suit, and before bankruptcy, but after the delivery of the cotton and after the sale to Wolff & Co., the defendant in error had Jackson, Bell & Co. to indorse their names on the back of the bill of lading.

Marsh & McIlwaine, for plaintiff in error. Warren & Briggs and Howell & Nabors, for defendant in error.

LEVY, J. (after stating the facts as above). [1, 2] By a proper assignment of error the point is made that the evidence in the present case shows that there was not a misdelivery of the cotton by the railway company under its shipping contract, and fails to show any liability to defendant in error. It appears from the evidence that the cotton sued for was transported from Gilmer to Sulphur Springs and there demanded by and delivered to the agent of Jackson, Bell & Co. without the production of the bill of lading. The defendant in error claims that the railway company is liable to him for the value of the cotton so delivered to Jackson, Bell & Co., because he was the real owner of the cotton, and it was shipped to shipper's order, and he was the holder and in possession of the bill of lading, which required by its terms its production by the consignee before such consignee would be entitled to demand the delivery of the cotton. Looking to the evidence, it appears that the defendant in error was the real owner of the cotton, and that he was in the relation towards Jackson, Bell & Co. of seller and buyer only in respect thereto at the time it was delivered to the railway company for shipment. But the circumstances, as disclosed by the evidence, under which the cotton was delivered to and

received by the railway company at Gilmer, were such as to reasonably warrant the agent of the railway company there in regarding and accepting Jackson, Bell & Co. as the owners and shippers of the cotton, and not as mere nominal shippers. After the agent received the cotton for shipment under the circumstances disclosed, without any notice that defendant in error had or claimed any interest in the cotton to be shipped or was in fact the real shipper, he delivered a bill of lading therefor, which was received and accepted by defendant in error by conduct of intention to the agent as the mere representative of Jackson, Bell & Co. No contention is made here of mistake in recitals. This is the only character of shipping agreement that appears to have been made between the parties. Having delivered the cotton to the railway company for shipment in the name of Jackson, Bell & Co. as shippers, and the railway company having no notice that they were not the shippers, and defendant in error having received and accepted a bill of lading stipulating in terms that the railway company was to deal with the cotton in the transportation and delivery as the cotton of Jackson, Bell & Co. as the owners and shippers, he, in the absence of fraud or mistake, would be presumed to have thereby acquiesced in the terms of the shipping contract. Giving force to the presumption that defendant in error in the facts assented to the terms of the contract of carriage of the cotton, then the railway company, not having knowledge that defendant in error owned or had any interest in the cotton, could, in the performance of the contract, because of the conduct in delivering the cotton for shipment and in making the contract of shipment, rely on the apparent title to the cotton being in Jackson, Bell & Co., the shippers. Having assented by the terms of the bill of lading that the railway company could transport and deliver the cotton as belonging to Jackson, Bell & Co., and the railway company having no notice to the contrary, the defendant in error therefore is not here shown to be in an attitude towards the shipment to justify him in asserting, as against the railway company, that he was the consignor or real shipper thereof. Whatever his rights as owner of the cotton, arising under the general law of sales and outside the terms of the shipping contract, as against Jackson, Bell & Co., and whatever of his rights as real shipper known to the railway company under different circumstances than here, the railway company, not having notice to the contrary, would only bear the risk of delivering the cotton to the persons entitled to it under the bill of lading and its indorsements. Not being in the attitude here towards the railway company of a consignor or real shipper in the facts, the defendant in error could not, therefore, as against the railway company, predicate a claim by or through himself as owner of the cotton. His rights of ownership as against Jackson, Bell & Co. would not be, as against the railway company, greater than the contract of carriage he assented to.

[3, 4] His rights, if any, therefore must be solely measured by the stipulation as to the production of the bill of lading. The bill of lading recites that the cotton was "received from Jackson, Bell & Co., consigned to shipper's order, notify Jackson, Bell & Co., Sulphur Springs," and provides that the bill of lading properly indorsed must be delivered to the delivering carrier before the consignee is entitled to receive the goods. It must therefore be taken as shown that the cotton was delivered to the railway company and was accepted by it to be shipped on the terms of the bill of lading and its stipulations, and without knowledge that defendant in error owned or had any interest in the shipment, and that defendant in error so knowing by intention acquiesced in the terms of the bill of lading. By the terms of carriage so made, as evidenced by the bill of lading, and which must determine the rights and liabilities of the parties here, the thing which the railway company must be considered as having undertaken, and which became its duty to do, was to transport the cotton received at Gilmer from Jackson, Bell & Co. over its line to Sulphur Springs, Tex., and there deliver it to their order. Being thus bound to deliver the cotton at Sulphur Springs to the order of Jackson, Bell & Co., the railway company would be required to presume that such shippers retained the title and have still the right to dispose of and control the cotton. So it is not doubted that the railway company would be required to make delivery of the cotton, as against Jackson, Bell & Co., to any bona fide transferee of the bill of lading from Jackson, Bell & Co. Here the facts are undisputed that at the time of the delivery of the cotton to the agent of Jackson, Bell & Co. on demand therefor, Jackson, Bell & Co. had given no order to defendant in error or any third person for the cotton, nor had the railway company any notice that defendant in error owned or had any interest in the cotton. Treating Jackson, Bell & Co. as having by the terms of the shipping contract consigned the cotton to their order, with instructions to notify themselves of its arrival, and not having given any order to the contrary for the delivery of the cotton, they were, in the circumstances, in the attitude of being both the consignees and consignors at the time of the demand for delivery. Being the consignors from whom the railway company received possession of the cotton, and there being no instructions from them for delivery to the contrary, the railway company, like any other bailee, would be required, in the circumstances, to respect the apparent ownership of the consignees, and could not question the shipper's right to

the cotton at the time of the demand therefor in evidence here. In such case, therefore, there being no order of Jackson, Bell & Co. outstanding in fact, the railway company, as between it and the consignors in the bill of lading, could waive the stipulation in the contract as to the production of the bill of lading and deliver the cotton without subjecting it to liability to them for failing to require the production of the bill of lading. Packing & Provision Co. v. Ry. Co., 103 Ga. 140, 29 S. E. 698, 40 L. R. A. 367; Railway Co v. Grayson County Bank, 100 Tex. 17, 93 S. W. 431; Gates v. Railway Co., 42 Neb. 379, 60 N. W. 583. As the delivery of the cotton in the evidence to Jackson, Bell & Co. was as to the railway company a valid and complete delivery of the cotton at the time, it follows, we think, that such delivery would not, in the facts of the case, subject the railway company to liability to the defendant in error. Jackson, Bell & Co. not having given defendant in error an order for the delivery of the cotton at the time of the delivery, he has failed to show in himself the rights of a consignee or transferee to demand and receive the cotton at the time the railway company in the evidence had the right to make a completed delivery to the consignors. Under his intention to the agent in delivering the cotton for shipment and the bill of lading assented to by defendant in error, Jackson, Bell & Co. were the shippers from the standpoint of the railway company; and, the apparent title being thus in them, a delivery to them on their demand would be valid as to the railway company, it having no notice of the failure of the presumption of apparent title, and there in fact being no outstanding order from them. The reason why the railway company is bound to deliver to the transferee the bill of lading in a shipper's order lies in the fact that such transferee properly becomes the consignee, and this is evidenced by and under the bill of lading produced. In the absence of such order by Jackson, Bell & Co., in this instance, they, and they only, were in the facts here the consignees; and, the shipment being properly delivered to them at the time, the bill of lading thereafter became of no force or value as against the railway company.

[5] The delivery of the cotton to Jackson, Bell & Co. being in the evidence complete and valid at the time of such delivery to them by the railway company, the indorsement of the bill of lading some time thereafter by Jackson, Bell & Co. therefore conferred upon defendant in error no rights as against the railway company for the failure to require its surrender at the time of making the delivery of the cotton. Anchor Mills Co. v. Railway Co., 102 Iowa, 262, 71 N. W. 255; Bank v. Transportation Co., 59 App. Div. 270, 69 N. Y. Supp. 396. Not having

shown in himself, as against the railway company, the rights of a consignee or transferee, and not being in the attitude in the facts to assert the rights of a consignor or that he was the shipper and that Jackson, Bell & Co. were only the nominal shippers to the knowledge of the railway company, the defendant in error, we think, has failed to establish any liability to him on the part of the railway company in this shipment. If defendant in error had been the consignor in the shipment, or had an order from the consignors in this shipment at the time of the delivery of the cotton, or had followed his actual ownership with a demand, as against Jackson, Bell & Co., and before the time of delivery by the railway company, of the railway company for the cotton, quite a different case might have been presented than is here. Further, if defendant in error had been the real shipper by intention and knowledge of the railway company at the time of the contract, then quite a different case might have been presented than is here.

The argument as to the rights of defendant in error to the ownership of the cotton has been thoroughly noticed in the brief, but in the facts of this case would be, we think, his rights as against Jackson, Bell & Co. alone and independent of the contract of shipment shown, and would not measure the rights of the parties here.

The judgment is reversed and here rendered for plaintiff in error, with all costs.