FAMOUS MANUFACTURING COMPANY, Appellant, v. CHICAGO & NORTHWESTERN RAILWAY Co., Appellee.

**Carriers:** BILL OF LADING: DELIVERY OF GOODS: CONVERSION.  By endorsement and delivery of a bill of lading the endorsee is clothed with apparent legal title to the property and the right to obtain delivery thereof.  A manufacturer consigned goods to itself, indorsed the bill of lading and delivered it to a bank, directed the bank to notify the purchaser and allow him to try the machine before settlement, as provided in the contract of purchase.  The bank directed the railway company to deliver the machine to the purchaser for trial.  After a trial the purchaser returned the machine to the railway company on the ground that it did not comply with the warranty, and refused to make settlement.  The manufacturer brought suit against the railway company for conversion of the property.  *Held,* that the bank was entitled to possession of the machine either as owner or agent, and delivery to the purchaser at its direction was in legal effect delivery to the bank, and that the action for conversion would not lie.

**Same:** BILL OF LADING: WAIVER OF PROVISIONS.  The provision in a bill of lading that the same shall be surrendered before delivery of the property is for the protection of the carrier and may be waived.

**Same:** DELIVERY OF GOODS. One holding an endorsed bill of lading may
direct the delivery of the property by the carrier to another; and
even though the endorsee may have exceeded his authority in this
respect, or the buyer was not justified in rejecting the property,
neither fact would give the shipper any claim against the carrier
for conversion.

**Same.** Where the contract of sale provided for a trial of the machinery
and there was no provision for a settlement prior to the trial, the
endorsee of the bill of lading, who was advised of the right of such
trial, was under no obligation to require a settlement before delivery
of the bill of lading to the purchaser and a trial of the machine.

*Appeal from Clinton District Court.*—HON. ARTHUR P.
BARKER, Judge.

SATURDAY, JUNE 20, 1914.

ACTION for damages for wrongful conversion of mer-
chandise shipped by the plaintiff over the defendant's railway.
The answer admitted the shipment and denied the conversion;
the real question in the case being whether the defendant made
an unauthorized delivery of the shipment at its destination to
a third person. At the close of the evidence, there was a di-
rected verdict for the defendant, and the plaintiff appeals—
*Affirmed.*

*Ernest L. Miller* and *Lee R. Harding,* for appellant.

*James C. Davis, A. A. McLaughlin, George E. Hise* and
*Ellis & McCoy,* for appellee.

EVANS, J.—The material facts are undisputed. The ship-
ment in question originated in Indiana with the Pennsylvania
Railroad Company, and was billed for Fulton, Ill., over the
railway of the defendant. It consisted of a "power bale press"
of the value of $340, consigned by the plaintiff to itself as
consignee, and bill of lading was issued accordingly. It arrived
at its destination under a waybill containing the following

notation: "Notify C. J. Bugbee." This shipment was made by the plaintiff company in pursuance of a written order of purchase signed by Bugbee, which was as follows:

Dated at Fulton, Ill., Oct. 15, 1909.

To Famous Manufacturing Co., East Chicago, Ind.

I hereby order of you, to be shipped on or before the 20th day of October, or as soon thereafter as possible, via C. & N. W. Ry., in care of yourselves at Fulton, state of Illinois, machines as follows:

One "Champion" detached power baling press, size 16x 18 complete with 4 H mounted power, complete with metal truck wheels and such fixtures and extras as you usually furnish, also the following attachments: Gong & bale length indicator & bale weighing attachment.

In consideration whereof, the undersigned agrees to receive the above ordered machinery on arrival, and to pay freight and charges, and to pay to your order, at the time of delivery, the sum of three hundred forty ($340.00) dollars, as follows:

Cash in hand ........................$85.
Note due first day of March, 1910......... 85.   7% interest
Note due first day of November, 1910 ..... 85.
Note due first day of March, 1911 ........ 85.

The above notes to bear interest at the highest legal rate from date until paid.

And further to give in security of the foregoing notes a first mortgage on the above named machinery.

When man is sent to start press, settlement must in all cases be made with him as soon as press is set to work and performs as warranted. Failing to pay said money or execute and deliver said notes, this order shall stand as purchasers' written obligation, and have the same force and effect as notes, for all sums not paid in cash.

It is also fully understood and agreed that if the purchaser does not make full settlement for the hay press with cash or notes as above provided, upon its delivery to him, he thereby waives all claim under this warranty.

Said machinery is purchased upon and subject to no

other conditions than the warranty given in circular or catalogue, relating to machine ordered.

C. J. BUGBEE.

The warranty referred to in the foregoing order, contained the following provision:

The purchaser shall have a trial of two successive days from day of receiving same, and, should the purchaser fail to make the machine perform as above, immediate notice must be given to us and to the agent from whom the machine was purchased, subject to a second trial in our presence. Then, if the failure has not arisen from any defect in the machine, the purchaser to pay the expenses of the trip. But should the defect be in the machine, and person sent is unable to make it work as warranted, the purchaser is to return it to place of delivery and money paid will be refunded.

The plaintiff did not send the bill of lading to Bugbee. It did send the same duly indorsed in blank to the First National Bank of Lyons, Iowa, the city of Lyons being located just across the river from Fulton. The purpose of sending such bill of lading to the bank was to enable it to make settlement with Bugbee for the plaintiff for the purchase price. Plaintiff's letter of instructions to the bank contained the following:

According to the terms of our warranty, he is to have two days in which to try the machine. You will therefore hold the payment and settlement papers until such a time has elapsed, and, if you are not advised to the contrary by him, you will then mail all to us in the self-addressed stamped envelope.

The bank was in possession of the bill of lading duly indorsed by the plaintiff. It called up the defendant's railway office at Fulton by telephone and advised the depot agent that it had the bill of lading, and directed the depot agent to deliver the shipment to Bugbee. It also advised the depot

agent that Bugbee was entitled to two days' trial of the baling press. Thereupon the local agent complied with such direction, and delivered the shipment to Bugbee, without any other knowledge of the mutual rights of the parties than was thus communicated to him by the holder of the bill of lading. After a purported trial of the machinery by Bugbee, he returned the same to the railway company at the place of delivery in purported compliance with the conditions of the warranty and upon the alleged ground that the machinery in question did not perform according to the warranty. The plaintiff was at once notified by the railway agent, but it refused to recognize the rescission or to have anything to do with the property thus returned.

The argument of the plaintiff, in brief, is that the bank had no authority to direct the delivery of the property to Bugbee, and that the railway company was bound to ascertain the extent of its authority, and that its delivery of the property to Bugbee without an actual surrender of the bill of lading was unauthorized, and rendered the railway company liable for conversion of the goods. There are, however, several reasons that stand out prominently in the record why the plaintiff is not entitled to recover upon such theory or upon any other.

I. By delivering to the bank the bill of lading duly indorsed, the plaintiff clothed the bank with the apparent legal title to the property, and with the undoubted right to obtain delivery of possession from the railway company. *Bank v. Milling Company,* 103 Iowa, 518; *Milling Co. v. Railway Co.,* 102 Iowa, 262; *Chicago Packing Co. v. Railway Co.,* 103 Ga. 140 (29 S. E. 698, 40 L. R. A. 367).

1. CARRIERS: bill of lading: delivery of goods: conversion.

What the right of the bank was as between it and the plaintiff was not material, in the absence of any knowledge or notice to the railway company. If the bank through an appropriate officer, had appeared at the railway office at Fulton with the bill of lading in its possession duly indorsed,

it is undeniable that the railway company could properly have delivered the consignment to him. In legal effect, this was what was done. The delivery to Bugbee at the direction of the holder of the indorsed bill of lading was, in legal effect, a delivery to such holder. *Gates v. Railway Co.*, 42 Neb. 379 (60 N. W. 583).

We think it quite immaterial whether the bank be deemed for the purpose as the mere agent of the plaintiff or whether as the holder of the legal title or of the right of possession of the consignment under the indorsed bill of lading. If it was the mere agent of the plaintiff, the indorsed bill of lading measured the extent of its agency, so far as the defendant was concerned. In the presence of the indorsed bill of lading, the railway company was legally justified in good faith to deliver the consignment in accord with the directions of the holder thereof, and it became thereby entitled to a surrender of such bill of lading. Such is the sum of this case.

Appellant relies upon a provision in the bill of lading requiring the surrender of the original before the delivery of the property, as follows:

The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property.

But this provision here quoted added nothing to the rights of the consignor. His right to appropriate delivery was complete without such provision. Such provision was for the benefit of the railway company, and gave to it the right to protect itself by demanding presentation and actual surrender of the bill of lading before making delivery even to a proper party. The fact that it waived such provision in this case cast upon it the burden of proving that the person to whom or upon whose direction it delivered the property was in fact the holder of the bill of lading at such time. Such fact is un-

2. Same: bill of lading: waiver of provisions.

disputed.   On this point, see *Schlichting v. Railway Co.*, 121
Iowa, 502; *Chicago Packing Co. v. Railway Co., supra; Dobbin
v. Railway Co.*, 56 Mich. 522 (23 N. W. 204) ; *Bank v. Trans-
portation Co.*, 172 N. Y. 596 (64 N. E. 1123).

In Hutchinson on Carriers the rule is stated as follows:

And, although a bill of lading providing for a delivery to
the consignor or his order contains an express provision that
the carrier shall require its surrender or production before
making delivery of the goods, *such requirement, it is said,
will be considered as having been inserted for the benefit of
the carrier, and as between himself and the consignor cannot
subject the carrier to liability for failing to require the pro-
duction of the bill of lading or making delivery to one to
whom the consignor has ordered that the goods shall be de-
livered.*   Section 181, vol. 1.

In *Chicago Packing Co. v. Railway Co., supra,* the bill of
lading was indorsed by the consignor as follows:

Delivery to Hobbs & Tucker, or order, for collection.

Hobbs & Tucker directed the railway company to ·deliver
the consignment to one Ragan, such direction being in writing
as follows:

E. N. Clark, Agent:   Let N. L. Ragan have car meat on
dry track, and I will be responsible for bill of lading.
                                    [Signed]   A. W. TUCKER.

Delivery was made in pursuance of such direction.   The
consignor repudiated the · delivery to Ragan, and sought to
hold the railway company liable for delivering without a
surrender of the bill of lading.   This point was disposed of
in the opinion of the court as follows:

The contention was that Hobbs & Tucker were special
agents of the Chicago Company, and that in dealing with
them as such the railway company was bound to inquire into

the extent of their authority. We do not think this is a case where the rule that is said to be involved is applicable. Hobbs & Tucker, under the facts cited, were the agents of the plaintiff, through whom it sought and obtained delivery to itself under the terms of its contract with the carrier. The railway company did exactly what it agreed to do when it delivered the goods to the order of Hobbs & Tucker, and it had no concern with the plaintiff's reasons for giving this order or its purpose in so doing. . . . . The words 'for collection' were vital as between Hobbs & Tucker, as restrictive of the firm's authority to dispose of the goods after receiving them from the carrier, but were not even intended to qualify the right of the firm to demand of the carrier a full and complete possession of the goods. . . . In not insisting upon the surrender of the bills of lading as a prerequisite to delivery the carrier simply waived a right which, as against the original consignor, it had reserved to itself under the terms of the contract of the shipment. . . . As to the fact that Tucker later on signed the orders upon which Clark, the agent of the railway company, delivered the meat to Ragan, it is only necessary to say that, upon the identical set of facts here presented with reference to this matter, this court, in the case first cited, *supra,* held that the acts of the packer in giving the orders in question were properly treated by the agent to whom they were addressed as the acts of the firm itself.

It is urged by appellant that the bank exceeded its authority in delivering, or directing a delivery of, the consignment to Bugbee before a settlement had by the execution of

3. Same: delivery of goods.

notes and· chattel mortgage. If this contention were conceded, it would create no affirmative liability against the railway company, although it would furnish a defense to the company if the converse were true. It is further urged that Bugbee was not justified in rejecting the baling press after trial, but this fact is not available to the plaintiff as an affirmative ground of action against the railway company. If the converse were true, it might appropriately be considered in defense against liability of the railway company. The pivotal question at this point was: Was the bank entitled to obtain delivery from the railway company under

the indorsed bill of lading? If it was not, then there was no one to whom the railway company could make the delivery at Fulton.

The bank was directed by the plaintiff to make the settlement with Bugbee. Its possession of the consignment was essential to such settlement so that delivery could be made to Bugbee upon such settlement. The theory of plaintiff is that it was the bank's duty to it to make settlement with Bugbee by taking his notes and mortgage and thereafter to deliver to Bugbee the bill of lading. There was nothing in Bugbee's contract that would require him to submit to such a method of dealing. He did not contract for a bill of lading, nor would such method of dealing be consistent with his right of two days' trial of the machinery. The letter of plaintiff to the bank clearly indicated that Bugbee was entitled to a two days' trial before the plaintiff was entitled to the possession of Bugbee's notes. But we need not pursue this point. The defendant's full duty was done when it delivered the consignment under the direction of the bank as the holder of the bill of lading. If Bugbee failed to give the machinery a fair trial, and wrongfully returned the same to the railway company as being the source from which he received it, it created no new liability against the railway company. Under its contract with Bugbee, the plaintiff had a complete remedy against him in such a case. The railway company was not bound to mediate between or carry the burden of the one or the other. Other points discussed need not be considered. What we have already said is necessarily decisive of the case. The verdict was properly directed, and the order is accordingly—*Affirmed.*

4. SAME.

LADD, C. J., and WEAVER and PRESTON, JJ., concurring.