# Gus Datillo Fruit Co. v. Louisville & Nashville Railroad Company.

(Decided Dec. 5, 1933.)

J. S. LUSCHER and LEO CIACIO for appellant.

ASHBY M. WARREN, WOODWARD, HAMILTON & HOBSON and WILBUR FIELDS for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On November 30, 1930, the Mexican Trailer Steamship Company of Mobile, Ala., shipped to itself, as consignee, to Louisville, Ky., four carloads of bananas with the view of selling same to appellant, Gus Datillo, doing business as Gus Datillo Fruit Company, in Louisville, Ky. On the arrival of the bananas in Louisville, the appellee railroad company notified appellant and he called the consignor by telephone and terms of purchase were agreed on whereby appellant purchased the four carloads of bananas. Shortly before the arrival of the bananas, the bank with which appellant had his money deposited closed its doors and appellant, for the time being, was without means to pay the freight on these shipments. The railroad company would not deliver the shipments to him until the freight was paid. He succeeded in selling one carload of the bananas to a fruit dealer in Louisville and thereby obtained funds with which to pay the freight in full on three of the cars and a part payment on the fourth car, whereupon the railway company delivered to him the possessions of all

four cars. The three cars on which the freight was paid in full were immediately unloaded and they are not in question herein. But appellee railway company would not permit appellant to unload the fourth car until the balance of the freight on it was paid. The car was placed upon the team track and opened and appellant inspected the fruit and signed a written acceptance of it. The seal of the railroad company was removed from the car and appellant put his seals on it. The acceptance so signed reads:

"We, the undersigned, hereby accept car FGE 33190 arrived 12:10 P. M.—11-20 Commodity Bananas and guarantee the payment of all charges.
"[Signed]  Gus Datillo."

The acceptance of the car was on November 20, 1930, and on November 21st, the following day, appellant went to the railroad yards and put his seals on the car in question and there were no railroad company seals on the car after that date. Appellant made an inspection of the physical condition of the bananas on the 20th and 21st of November and found them to be in good condition, and again inspected them on the 24th and 25th of November and they were neither frozen nor chilled, but he noticed that they were cold. On the 27th there was a decided drop in the temperature and he put an oil burner in the car for the purpose of keeping the fruit warm. On the 29th of November, having succeeded in obtaining money to pay the balance of the freight, he then proceeded to unload the car and found that the bananas were badly frozen and chilled.

Thereafter appellant brought this suit in the Jefferson circuit court to recover of appellee damages as a consequence of the bananas having frozen while in appellee's car as above stated and asked that he recover of appellee the sum of $551.50. A trial was had by jury and at the close of the testimony for appellant the court directed the jury to find a verdict for appellee, and entered a judgment dismissing appellant's petition from which judgment this appeal is prosecuted.

It is conceded by appellant that appellee's liability as a common carrier had ended, but his contention is that appellee railway company retained in its possession the car of bananas in question and its liability was that of a warehouseman. If the railway company re-

tained possession of the bananas, appellant's contentions might be well taken. But the decisive question herein is whether or not the railway company retained the possession of the bananas or whether they were in the possession of appellant during the time between his acceptance thereof and the time of removal by him, during which time the damages complained of occurred.

Appellant insists that the car was defective, in that, it was not in proper condition to protect the bananas from freezing, and that he called upon appellee for a steam inspection of the car which it failed to make. Appellant testified that he had had many years experience in handling bananas and that the temperature at which to hold bananas was 58 degrees Fahrenheit; and that the temperature of the bananas on arrival was 58 degrees; that under the temperature of 55 degrees the bananas would chill and over 60 degrees they would ripen and below 45 degrees there was real danger of chilling and that below 35 degrees they would turn black, freeze, and become worthless. It is apparent from his testimony that he was well versed on the subject of bananas and an expert in that line. He examined the bananas and said that they were in good condition and the temperature of the car was proper. He accepted the bananas, placed his own seal upon the car, had full access to them, put the oil burner in the car for the purpose of protecting them from cold, and chose his own method of protecting and preserving them. After the freight was paid, the railway company made no further charge except what is known as demurrage which is in effect rent, for the car in which the bananas remained after delivery to appellant. After the arrival of the bananas at their destination, if the railway company had retained possession of them, then its liability would have been that of a warehouseman. But in view of the facts presented by this record, it is our view that the railroad company did not retain possession of the bananas but delivered same to appellant and only permitted them to remain in its car on which it charged demurrage or rent for the time they remained in it, excluding the initial 48 hours according to the rules of railway companies.

We are not favored by counsel for either side with a citation of a Kentucky case directly in point with the question involved herein, and we know of none, but

courts of other states have had occasion to pass on such question. In the case of Whitney Mfg. Co. v. Railroad Co., 38 S. C. 365, 17 S. E. 147, 148, 37 Am. St. Rep. 767, in discussing a question similar to the instant case, the court said:

"A common carrier undertakes to deliver at a certain point in a city, and does then actually deliver; but after such delivery the owner asks the privilege of allowing his goods to remain in the vehicle, and injury afterwards happens, there is no liability upon the common carrier, if he does not interfere to cause that injury."

See, also, to the same effect, Anchor Mill Co. v. Burlington, C. R. & N. Ry. Co., 102 Iowa, 262, 71 N. W. 255.

The case of Vaughn v. New York, N. H. & H. R. Co., 27 R. I. 235, 61 A. 695, 696, is a case where the property had been delivered on the spur track, as in the instant case. In discussing the liability of the carrier, the court said:

"* * * and the mere fact that it still remained in the defendant's cars was a mere matter of convenience for the plaintiff, but did not impose any liability on the defendant."

In 10 C. J., paragraph 351, the rule is thus stated: "When the consignee has assumed full dominion and control over the goods there is a complete delivery which terminates the liability of the carrier whether as carrier or warehouseman."

There are many other cases of similar holdings, but it is not necessary to recite excerpts therefrom.

In the instant case, appellant, according to his own evidence, assumed full control over the bananas in question, which constituted complete delivery to him, and this is particularly so in as much as he undertook to and did supervise and care for them and provide his own means of protection. He states in his testimony that he thought the car was defective, and he knew the bananas were becoming chilled, yet he allowed them to remain in the car. He was at liberty to remove the bananas from the car at any time. It may be true, however, that he was financially unable to pay the

freight on the car as a necessary prerequisite to unload it and remove the bananas, but it was his own misfortune for which appellee was not responsible.

In view of the facts disclosed by this record, measured to the authorities herein cited, it is our conclusion that the trial court properly instructed the jury to find a verdict for defendant.

The judgment is affirmed.